NYNEX CORP. ET AL. *v.* DISCON, INC.

No. 96–1570. Argued October 5, 1998—Decided December 14, 1998

*James R. Young* argued the cause for petitioners.  With him on the briefs were *John Thorne, Richard G. Taranto, Guy Miller Struve, James D. Liss,* and *Vincent T. Chang.*

*Deputy Solicitor General Wallace* argued the cause for the United States as *amicus curiae.* With him on the brief were *Solicitor General Waxman, Assistant Attorney General Klein, Deputy Assistant Attorney General Melamed, Barbara McDowell, Catherine G. O'Sullivan, Mark S. Popofsky,* and *Debra A. Valentine.*

*Lawrence C. Brown* argued the cause for respondent. With him on the brief was *John H. Ring III.** 

JUSTICE BREYER delivered the opinion of the Court.

In this case we ask whether the antitrust rule that group boycotts are illegal *per se* as set forth in *Klor's, Inc.* v. *Broadway-Hale Stores, Inc.,* 359 U. S. 207, 212 (1959), applies to a buyer's decision to buy from one seller rather than another, when that decision cannot be justified in terms of ordinary competitive objectives. We hold that the *per se* group boycott rule does not apply.

I

Before 1984 American Telephone and Telegraph Company (AT&T) supplied most of the Nation's telephone service and, through wholly owned subsidiaries such as Western Electric, it also supplied much of the Nation's telephone equipment. In 1984 an antitrust consent decree took AT&T out of the *local* telephone service business and left AT&T a *long-distance* telephone service provider, competing with such firms as MCI and Sprint. See M. Kellogg, J. Thorne, & P. Huber, Federal Telecommunications Law § 4.6, p. 221

---

*Briefs of *amici curiae* urging reversal were filed for the American Automobile Manufacturers Association by *Stephen M. Shapiro, Roy T. Englert, Jr., Donald M. Falk,* and *Mark Slywynsky;* for the Business Roundtable by *Thomas B. Leary* and *Robert C. Weinbaum;* for GTE Corporation by *Christopher Landau, Paul T. Cappuccio, William P. Barr,* and *M. Edward Whelan III;* and for the Association of the Bar of the City of New York by *Richard M. Steuer.*

*Mark R. Patterson* and *Stephen F. Ross* filed a brief for Law Professors as *amici curiae* urging affirmance.

(1992). The decree transformed AT&T's formerly owned local telephone companies into independent firms. At the same time, the decree insisted that those local firms help assure competitive long-distance service by guaranteeing long-distance companies physical access to their systems and to their local customers. See *United States* v. *American Telephone & Telegraph Co.,* 552 F. Supp. 131, 225, 227 (DC 1982), aff'd *sub nom. Maryland* v. *United States,* 460 U. S. 1001 (1983). To guarantee that physical access, some local telephone firms had to install new call-switching equipment; and to install new call-switching equipment, they often had to remove old call-switching equipment. This case involves the business of removing that old switching equipment (and other obsolete telephone equipment)—a business called *"removal services."*

Discon, Inc., the respondent, sold removal services used by New York Telephone Company, a firm supplying local telephone service in much of New York State and parts of Connecticut. New York Telephone is a subsidiary of NYNEX Corporation. NYNEX also owns Materiel Enterprises Company, a purchasing entity that bought removal services for New York Telephone. Discon, in a lengthy detailed complaint, alleged that the NYNEX defendants (namely, NYNEX, New York Telephone, Materiel Enterprises, and several NYNEX related individuals) engaged in unfair, improper, and anticompetitive activities in order to hurt Discon and to benefit Discon's removal services competitor, AT&T Technologies, a lineal descendant of Western Electric. The Federal District Court dismissed Discon's complaint for failure to state a claim. The Court of Appeals for the Second Circuit affirmed that dismissal with an exception, and that exception is before us for consideration.

The Second Circuit focused on one of Discon's specific claims, a claim that Materiel Enterprises had switched its purchases from Discon to Discon's competitor, AT&T Tech-

nologies, as part of an attempt to defraud local telephone service customers by hoodwinking regulators. According to Discon, Materiel Enterprises would pay AT&T Technologies more than Discon would have charged for similar removal services. It did so because it could pass the higher prices on to New York Telephone, which in turn could pass those prices on to telephone consumers in the form of higher regulatory-agency-approved telephone service charges. At the end of the year, Materiel Enterprises would receive a special rebate from AT&T Technologies, which Materiel Enterprises would share with its parent, NYNEX. Discon added that it refused to participate in this fraudulent scheme, with the result that Materiel Enterprises would not buy from Discon, and Discon went out of business.

These allegations, the Second Circuit said, state a cause of action under § 1 of the Sherman Act, though under a "different legal theory" from the one articulated by Discon. 93 F. 3d 1055, 1060 (1996). The Second Circuit conceded that ordinarily "the decision to discriminate in favor of one supplier over another will have a pro-competitive intent and effect." *Id.,* at 1061. But, it added, in this case, "no such pro-competitive rationale appears on the face of the complaint." *Ibid.* Rather, the complaint alleges Materiel Enterprises' decision to buy from AT&T Technologies, rather than from Discon, was intended to be, and was, "anti-competitive." *Ibid.* Hence, "Discon has alleged a cause of action under, at least, the rule of reason, and possibly under the *per se* rule applied to group boycotts in *Klor's,* if the restraint of trade '"has no purpose except stifling competition."'" *Ibid.* (quoting *Oreck Corp.* v. *Whirlpool Corp.,* 579 F. 2d 126, 131 (CA2) (en banc) (in turn quoting *White Motor Co.* v. *United States,* 372 U. S. 253, 263 (1963)), cert. denied, 439 U. S. 946 (1978)). For somewhat similar reasons the Second Circuit believed the complaint stated a valid claim of conspiracy to monopolize under § 2 of the Sherman Act. See 93 F. 3d, at 1061–1062.

The Second Circuit noted that the Courts of Appeals are uncertain as to whether, or when, the *per se* group boycott rule applies to a decision by a purchaser to favor one supplier over another (which the Second Circuit called a "two-firm group boycott"). Compare *Com-Tel, Inc.* v. *DuKane Corp.,* 669 F. 2d 404, 411–413, and nn. 13, 16 (CA6 1982); *Cascade Cabinet Co.* v. *Western Cabinet & Millwork Inc.,* 710 F. 2d 1366, 1370–1371 (CA9 1983), with *Construction Aggregate Transport, Inc.* v. *Florida Rock Industries, Inc.,* 710 F. 2d 752, 776–778 (CA11 1983). We granted certiorari in order to consider the applicability of the *per se* group boycott rule where a single buyer favors one seller over another, albeit for an improper reason.

## II

As this Court has made clear, the Sherman Act's prohibition of "[e]very" agreement in "restraint of trade," 26 Stat. 209, as amended, 15 U. S. C. § 1, prohibits only agreements that *unreasonably* restrain trade. See *Business Electronics Corp.* v. *Sharp Electronics Corp.,* 485 U. S. 717, 723 (1988) (citing *National Collegiate Athletic Assn.* v. *Board of Regents of Univ. of Okla.,* 468 U. S. 85, 98 (1984)); *Standard Oil Co. of N. J.* v. *United States,* 221 U. S. 1, 59–62 (1911); 2 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 320b, p. 49 (1995). Yet certain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances. See *State Oil Co.* v. *Khan,* 522 U. S. 3, 10 (1997); *Northwest Wholesale Stationers, Inc.* v. *Pacific Stationery & Printing Co.,* 472 U. S. 284, 289–290 (1985); 2 Areeda & Hovenkamp, *supra,* ¶ 320b, at 49–52. An agreement of such a kind is unlawful *per se.* See, *e. g., United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 218 (1940) (finding horizontal price-fixing agreement *per se* illegal); *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.,* 220 U. S. 373, 408 (1911) (finding vertical price-fixing agreement *per se* illegal);

*Palmer* v. *BRG of Ga., Inc.,* 498 U. S. 46, 49–50 (1990) *(per curiam)* (finding horizontal market division *per se* illegal).

The Court has found the *per se* rule applicable in certain group boycott cases. Thus, in *Fashion Originators' Guild of America, Inc.* v. *FTC,* 312 U. S. 457 (1941), this Court considered a group boycott created by an agreement among a group of clothing designers, manufacturers, suppliers, and retailers. The defendant designers, manufacturers, and suppliers had promised not to sell their clothes to retailers who bought clothes from competing manufacturers and suppliers. The defendants wanted to present evidence that would show their agreement was justified because the boycotted competitors used "pira[ted]" fashion designs. *Id.,* at 467. But the Court wrote that "it was not error to refuse to hear the evidence offered"—evidence that the agreement was reasonable and necessary to "protect . . . against the devastating evils" of design pirating—for that evidence "is no more material than would be the reasonableness of the prices fixed" by a price-fixing agreement. *Id.,* at 467–468.

In *Klor's* the Court also applied the *per se* rule. The Court considered a boycott created when a retail store, Broadway-Hale, and 10 household appliance manufacturers and their distributors agreed that the distributors would not sell, or would sell only at discriminatory prices, household appliances to Broadway-Hale's small, nearby competitor, namely, Klor's. 359 U. S., at 208–209. The defendants had submitted undisputed evidence that their agreement hurt only one competitor (Klor's) and that so many other nearby appliance-selling competitors remained that competition in the marketplace continued to thrive. *Id.,* at 209–210. The Court held that this evidence was beside the point. The conspiracy was "not to be tolerated merely because the victim is just one merchant." *Id.,* at 213. The Court thereby inferred injury to the competitive process itself from the nature of the boycott agreement. And it forbade, as a matter

of law, a defense based upon a claim that only one small firm, not competition itself, had suffered injury.

The case before us involves *Klor's*. The Second Circuit did not forbid the defendants to introduce evidence of "justification." To the contrary, it invited the defendants to do so, for it said that the *"per se* rule" would apply only if no "pro-competitive justification" were to be found. 93 F. 3d, at 1061; cf. 7 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 1510, p. 416 (1986) ("Boycotts are said to be unlawful per se but justifications are routinely considered in defining the forbidden category"). Thus, the specific legal question before us is whether an antitrust court considering an agreement by a buyer to purchase goods or services from one supplier rather than another should (after examining the buyer's reasons or justifications) apply the *per se* rule if it finds no legitimate business reason for that purchasing decision. We conclude no boycott-related *per se* rule applies and that the plaintiff here must allege and prove harm, not just to a single competitor, but to the competitive process, *i. e.*, to competition itself.

Our conclusion rests in large part upon precedent, for precedent limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors. The agreement in *Fashion Originators' Guild* involved what may be called a group boycott in the strongest sense: A group of competitors threatened to withhold business from third parties unless those third parties would help them injure their directly competing rivals. Although *Klor's* involved a threat made by a *single* powerful firm, it also involved a horizontal agreement among those threatened, namely, the appliance suppliers, to hurt a competitor of the retailer who made the threat. See 359 U. S., at 208–209; see also P. Areeda & L. Kaplow, Antitrust Analysis: Problems, Text, and Cases 333 (5th ed. 1997) (defining paradigmatic boycott as "collective action among a group of com-

petitors that may inhibit the competitive vitality of rivals"); 11 H. Hovenkamp, Antitrust Law ¶ 1901e, pp. 189–190 (1998). This Court emphasized in *Klor's* that the agreement at issue was

> "not a case of a single trader refusing to deal with another, nor even of a manufacturer and a dealer agreeing to an exclusive distributorship. Alleged in this complaint is a wide combination consisting of manufacturers, distributors and a retailer." 359 U. S., at 212–213 (footnote omitted).

This Court subsequently pointed out specifically that *Klor's* was a case involving not simply a "vertical" agreement between supplier and customer, but a case that also involved a "horizontal" agreement among competitors. See *Business Electronics*, 485 U. S., at 734. And in doing so, the Court held that a "vertical restraint is not illegal *per se* unless it includes some agreement on price or price levels." *Id.*, at 735–736. This precedent makes the *per se* rule inapplicable, for the case before us concerns only a vertical agreement and a vertical restraint, a restraint that takes the form of depriving a supplier of a potential customer. See 11 Hovenkamp, *supra,* ¶ 1902d, at 198.

We have not found any special feature of this case that could distinguish it from the precedent we have just discussed. We concede Discon's claim that the petitioners' behavior hurt consumers by raising telephone service rates. But that consumer injury naturally flowed not so much from a less competitive market for removal services, as from the exercise of market power that is *lawfully* in the hands of a monopolist, namely, New York Telephone, combined with a deception worked upon the regulatory agency that prevented the agency from controlling New York Telephone's exercise of its monopoly power.

To apply the *per se* rule here—where the buyer's decision, though not made for competitive reasons, composes

part of a regulatory fraud—would transform cases involving business behavior that is improper for various reasons, say, cases involving nepotism or personal pique, into treble-damages antitrust cases. And that *per se* rule would discourage firms from changing suppliers—even where the competitive process itself does not suffer harm. Cf. *Poller* v. *Columbia Broadcasting System, Inc.*, 368 U. S. 464, 484 (1962) (Harlan, J., dissenting) (citing *Packard Motor Car Co.* v. *Webster Motor Car Co.*, 243 F. 2d 418, 421 (CADC 1957)).

The freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage. Cf. *Standard Oil*, 221 U. S., at 62 (noting "the freedom of the individual right to contract when not unduly or improperly exercised [is] the most efficient means for the prevention of monopoly"). At the same time, other laws, for example, "unfair competition" laws, business tort laws, or regulatory laws, provide remedies for various "competitive practices thought to be offensive to proper standards of business morality." 3 P. Areeda & H. Hovenkamp, Antitrust Law ¶ 651d, p. 78 (1996). Thus, this Court has refused to apply *per se* reasoning in cases involving that kind of activity. See *Brooke Group Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U. S. 209, 225 (1993) ("Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws"); 3 Areeda & Hovenkamp, *supra*, ¶ 651d, at 80 ("[I]n the presence of substantial market power, some kinds of tortious behavior could anticompetitively create or sustain a monopoly, [but] it is wrong categorically to condemn such practices . . . or categorically to excuse them").

Discon points to another special feature of its complaint, namely, its claim that Materiel Enterprises hoped to drive Discon from the market lest Discon reveal its behavior to New York Telephone or to the relevant regulatory agency. That hope, says Discon, amounts to a special anticompetitive motive.

We do not see how the presence of this special motive, however, could make a significant difference. That motive does not turn Materiel Enterprises' actions into a "boycott" within the meaning of this Court's precedents. See *supra*, at 135–136. Nor, for that matter, do we understand how Discon believes the motive affected Materiel Enterprises' behavior. Why would Discon's demise have made Discon's employees less likely, rather than more likely, to report the overcharge/rebate scheme to telephone regulators? Regardless, a *per se* rule that would turn upon a showing that a defendant not only knew about but also hoped for a firm's demise would create a legal distinction—between corporate knowledge and corporate motive—that does not necessarily correspond to behavioral differences and which would be difficult to prove, making the resolution of already complex antitrust cases yet more difficult. We cannot find a convincing reason why the presence of this special motive should lead to the application of the *per se* rule.

Finally, we shall consider an argument that is related tangentially to Discon's *per se* claims. The complaint alleges that New York Telephone (through Materiel Enterprises) was the largest buyer of removal services in New York State, see Amended Complaint ¶¶ 2, 29, 99, App. 75, 83, 110, and that only AT&T Technologies competed for New York Telephone's business, see ¶¶ 2, 26, 29, *id.*, at 75, 82–83. One might ask whether these accompanying allegations are sufficient to warrant application of a *Klor's*-type presumption of consequent harm to the competitive process itself.

We believe that these allegations do not do so, for, as we have said, see *supra*, at 135–136, antitrust law does not permit the application of the *per se* rule in the boycott context in the absence of a horizontal agreement, though in other contexts, say, vertical price fixing, conduct may fall within the scope of a *per se* rule not at issue here, see, *e. g.*, *Dr. Miles Medical Co.*, 220 U. S., at 408. The complaint

itself explains why any such presumption would be particularly inappropriate here, for it suggests the presence of other potential or actual competitors, which fact, in the circumstances, could argue against the likelihood of anticompetitive harm. The complaint says, for example, that New York Telephone itself was a potential competitor in that New York Telephone considered removing its equipment by itself, and in fact did perform a few jobs itself. See ¶ 27, App. 83. The complaint also suggests that other nearby small local telephone companies needing removal services must have worked out some way to supply them. See ¶ 53, *id.*, at 91. The complaint's description of the removal business suggests that entry was easy, perhaps to the point where other firms, employing workers who knew how to remove a switch and sell it for scrap, might have entered that business almost at will. Cf. ¶ 27, *id.*, at 83. To that extent, the complaint suggests other actual or potential competitors might have provided roughly similar checks upon "equipment removal" prices and services with or without Discon. At the least, the complaint provides no sound basis for assuming the contrary. Its simple allegation of harm to Discon does not automatically show injury to competition.

## III

The Court of Appeals also upheld the complaint's charge of a conspiracy to monopolize in violation of § 2 of the Sherman Act. It did so, however, on the understanding that the conspiracy in question consisted of the very same purchasing practices that we have previously discussed. Unless those agreements harmed the competitive process, they did not amount to a conspiracy to monopolize. We do not see, on the basis of the facts alleged, how Discon could succeed on this claim without prevailing on its § 1 claim. See 3 Areeda & Hovenkamp, *supra*, ¶ 651e, at 81–82. Given our conclusion that Discon has not alleged a § 1 *per se* violation, we think it prudent to vacate this portion of the Court

of Appeals' decision and allow the court to reconsider its finding of a § 2 claim.

## IV

Petitioners ask us to reach beyond the *"per se"* issues and to hold that Discon's complaint does not allege anywhere that their purchasing decisions harmed the competitive process itself and, for this reason, it should be dismissed. They note that Discon has not pointed to any paragraph of the complaint that alleges harm to the competitive process. This matter, however, lies outside the questions presented for certiorari. Those questions were limited to the application of the *per se* rule. For that reason, we believe petitioners cannot raise that argument in this Court.

## V

For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*