202 F.3d 1088 (9th Cir. 2000)
 NOVA DESIGNS, INC., dba Performance Diver, Plaintiff-CounterDefendant-Appellant,
v.
SCUBA RETAILERS ASSOCIATION; PROFESSIONAL ASSOCIATION OF DIVE INSTRUCTORS, Defendants,
ELECTRONIC INSTRUMENTATION & TECHNOLOGY, INC., Defendant-Counter Claimant,
EIT MANUFACTURING; OPINION PRINCETON TECTONICS; SCUBA TIMES; BEUCHAT USA, INC.; ROBERT HOLSTON; HARRY TRUITT; SAL ZAMMITTI, Defendants,
PERFORMANCE, INC., a North Carolina corporation, Counter-Defendant,
and
INTERNATIONAL PADI, INC., Defendant-Appellee.
 No. 98-55358
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 7, 1999
Filed February 8, 2000
 
 1
 COUNSEL: John C. Butters, Atlanta, Georgia, for the plaintiff-appellant.
 
 
 2
 David E. Outwater, Stradling, Yocca, Carlson & Rauth, Newport Beach, California, for the defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California; Gary L. Taylor, District Judge, Presiding. D.C. No. CV-94-00875-GLT (Eex)
 
 
 4
 Before: Melvin Brunetti and A. Wallace Tashima, Circuit Judges, and William W Schwarzer,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 5
 This case is about an agreement between a corporation, having retailers as both members and customers, and a magazine publisher. We must decide whether one of the terms of this agreement, a restriction against carrying mail order advertising, can be found to be a per se violation of the antitrust laws.
 
 
 6
 Plaintiff Nova Designs, Inc. (doing business as Performance) sells scuba equipment and related items at retail through mail order catalogs. It advertises those items for sale at prices lower than those charged by competing retail stores and claims to be the first to offer such items through a fullcolor upscale catalog. In this action, it charges defendant PADI (an acronym for Professional Association of Dive Instructors) with conspiring to deny Performance access to the market for scuba gear. PADI is a for-profit corporation providing retail dive shops and diving instructors, who are its members and also its customers, supplies and services, including training of scuba diving instructors and diver certification cards, as well as group insurance, travel programs, and diver training. Through the PADI Retail Association, a division of PADI, it also teaches small businesses to operate dive stores successfully, a service for which the stores pay.
 
 
 7
 In this action, Performance charges that PADI (and other defendants who have since been dismissed) violatedSS 1 and 2 of the Sherman Act (15 U.S.C. SS 1, 2) and the Cartwright Act (Cal. Bus. & Prof. Code S 16700-16770), and engaged in tortious interference with business relations and unfair competition. It generally charges that PADI's retail members participated in a conspiracy to boycott any scuba entity that dealt with Performance and other discount mail order retailers by refusing to buy products from manufacturers who sold to Performance and refusing to carry magazines that sold advertising to Performance. More specifically, it contends that the retailers refused to deal with PADI unless PADI pressured Rodale Press, Inc., publisher of a new scuba diving magazine, not to accept advertising from Performance in its magazine.
 
 
 8
 The district court granted summary judgment for PADI on all counts. It held that Performance had waived any claim under the rule of reason and therefore applied a per se analysis under the Sherman Act. Finding that Performance had failed to come forward with evidence of any agreement between PADI's retailer members or between those members and Rodale or with evidence that PADI exercised market power or closed off access to the market necessary for effective competition, it held that Performance's claims failed. We have jurisdiction under 28 U.S.C. S 1291 and review the grant of summary judgment de novo. See Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1994).
 
 I. APPLICATION OF THE PER SE ANALYSIS
 
 9
 In its motion for summary judgment, PADI contended in essence that there was no evidence that it participated in any conspiracy. In its opposition, Performance argued only that PADI's agreement with Rodale was unlawful per se and made no claim that the agreement or any of PADI's conduct was subject to rule of reason analysis. As the district court put it, "Throughout its papers on these motions Performance does not raise any claim the evidence shows an unreasonable restraint of trade under a rule of reason analysis. " As a result, it found that Performance abandoned any claim under the rule of reason and analyzed its claims under the per se test of S 1.
 
 
 10
 Performance does not dispute the district court's characterization but places responsibility for its failure to argue rule of reason analysis on PADI's failure to argue rule of reason in its motion for summary judgment. That motion was based on the absence of evidence of any illegal agreement or conspiracy. The burden was on Performance, if it sought to press a claim under the rule of reason, to come forward with evidence raising a triable issue under the rule of reason, i.e., evidence bearing on market power, injury to competition, and economic sense. See Adaptive Power Solutions v. Hughes Missile Sys., 141 F.3d 947, 951-52 (9th Cir. 1998). Having failed to do so in the district court, it cannot now attack the judgment on rule of reason grounds. See Image Technical Serv., Inc. v. Eastman Kodak Co., 903 F.2d 612, 615 n.1 (9th Cir 1990) ("Appellants . . . argue that Kodak's conduct is illegal under a rule of reason analysis. We do not consider this argument because appellants failed to raise it in response to Kodak's motion forsummary judgment in the district court."); Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("The difficulty for Students, however, is that they failed to present this contention to the district court; it first appears in their opening brief on appeal. As a general rule, we will not consider arguments that are raised for the first time on appeal."). Accordingly, the issue we review is whether Performance has raised a triable issue that PADI's conduct was a per se violation of the Sherman Act.
 
 II. THE RODALE AGREEMENT
 
 11
 On January 13, 1992, PADI entered into an agreement with Rodale. About to publish a new diving magazine, Rodale sought access to PADI's membership and customer database to solicit subscriptions. In return for making this confidential information available, PADI would receive free advertising in Rodale's magazines. The agreement provided that "Rodale will establish its advertiser policies in a manner that acknowledges that scuba equipment requires training for safe use, that Rodale supports the dive industry standard that scuba equipment should be sold only to certified divers who can provide proof of certification at the point of purchase. " A "no mail order advertising" policy was important to PADI for two reasons. First, the database it furnished Rodale included information it received in confidence from its member-retailers, including the identity of their customers to whom the Rodale magazine would be sent; release of that information could harm PADI's relations with its customer-members who would object to use of the information to benefit mail order sales. Second, PADI considered that the use of scuba life support equipment by persons who have not been certified exposes those persons to substantial danger, and mail order sellers cannot determine whether their purchasers are certified. Moreover, Rodale itself had determined, from market research, that most dive shops would not carry magazines that carried mail order advertising for scuba gear.
 
 
 12
 Notwithstanding the agreement, in March 1992, Rodale announced that it would accept an advertising insert from Performance, interpreting the no mail order restriction as limited to scuba life support equipment. Several retailers complained to PADI about this insert, at least one stating that mail orders lower prices and force retailers to compete. PADI communicated its concern to Rodale which then, in May 1992, again changed its policy, rejecting all mail order advertising. In July 1992, however, PADI terminated its agreement with Rodale.
 
 
 13
 In Continental T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36 (1977), the Supreme Court explained that under the traditional framework of Section 1 analysis, rule of reason is the prevailing standard. "Per se rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive . . . [i.e., to] `agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.' " Id. at 49-50 (quoting Northern Pac. Ry. Co. v. United States, 356 U.S. 1, 5 (1958)). More recently, in Business Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717 (1988), the Court rejected a claim that an agreement between a manufacturer and a dealer to terminate a price cutter, without further agreement on prices, is subject to the per se rule. The Court declared that "there is a presumption in favor of a rule-of-reason standard [and] that departure from that standard must be justified by demonstrable economic effect." Id. at 725.
 
 
 14
 The short-lived agreement between PADI and Rodale for an exchange of confidential information from its customer-members in return for free advertising and a pledge to carry no mail order advertisementsdoes not meet the test under the per se rule. Certainly on the record made by Performance in the district court, no jury could find that it had a demonstrable adverse economic effect, much less a pernicious effect on competition or lack of redeeming virtue.
 
 III. GROUP BOYCOTT
 
 15
 Performance seeks to bootstrap the PADI-Rodale agreement into a horizontal group boycott involving the retailers who are PADI's members as well as its customers. The argument appears to be that because PADI acted on behalf of its customer-members in contracting with Rodale, the agreement is transformed into a concerted refusal to deal. There is no evidence, however, that PADI's customer-members joined in any agreement; membership alone is not proof of an agreement. See In re Citric Acid Litig., 191 F.3d 1090, 1097-98 (9th Cir. 1999). That some may have pressured PADI to enforce the no mail order advertising provision does not afford a basis for inferring an agreement. See Monsanto Co. v. Spray-Rite Serv. Corp. 465 U.S. 752, 763 (1984) ("Permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about `in response to' complaints, could deter or penalize perfectly legitimate conduct."); Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1154 (9th Cir. 1988). Furthermore, even treating PADI as a trade association whose actions may have caused some diminution in Performance's access to the market, a per se violation cannot be found unless the association "possesses market power or exclusive access to an element essential to effective competition." See Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co., 472 U.S. 284, 296 (1985). Nothing of the sort has been shown; neither PADI nor its members have been shown to possess market power or control of market access.
 
 
 16
 Furthermore, PADI and Rodale are not competitors, which precludes the application of the per se rule for horizontal group boycotts. The Supreme Court has found that the per se rule for group boycotts should be limited to cases "involving horizontal agreements among direct competitors." NYNEX Corp. v. Discon, Inc., 119 S.Ct. 493, 498 (1998). Since PADI and Rodale are not competitors, the district court correctly concluded that the per se rule for group boycotts should not apply to the Rodale-PADI agreement.
 
 
 17
 Because Performance's claim underS 1 fails, its claim of a conspiracy to monopolize under S 2 based on the same conduct necessarily fails as well. See NYNEX Corp., 119 S.Ct. at 500.
 
 IV. STATE LAW CLAIMS
 
 18
 Our disposition of Performance's Sherman Act claims disposes of its claims under the California Cartwright Act. The Cartwright Act is patterned after the Sherman Act, and "federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." Marin County Bd. of Realtors, Inc. v. Palsson, 549 P.2d 833, 835 (Cal. 1976) (In Bank). As for its claim for tortious interference with prospective economic advantage, Performance presents only a cursory argument demonstrating no triable issue. Similarly, Performance offers no evidence or analysis on its California unfair competition claim. Accordingly, we affirm the summary judgment in favor of PADI on Performance's state law claims.
 
 
 19
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation