**PHILLIPS GETSCHOW COMPANY,**
Plaintiff,

v.

**GREEN BAY BROWN COUNTY PROFESSIONAL FOOTBALL STADIUM DISTRICT, Lambeau Field Redevelopment, LLC, and Turner Construction Company, Defendants.**

No. 02–C–437.

United States District Court,
E.D. Wisconsin.

Jan. 2, 2003.

Gregory B Conway, Liebmann Conway Olejniczak & Jerry, Green Bay, for Green Bay Brown County Professional Football Stadium District, Lambeau Field Redevelopment LLC, Turner Construction Company, Defendants.

Philip J Danen, Stellpflug Janssen Nell Hammer, Kirschling & Bartels, De Pere, for Phillips Getschow Company, Plaintiff.

G Michael Halfenger, Foley & Lardner, Milwaukee, for Green Bay Brown County Professional Football Stadium District, Lambeau Field Redevelopment LLC, Turner Construction Company, Defendants.

Eric L Maassen, Foley & Lardner, Milwaukee, for Green Bay Brown County Professional Football Stadium District, Lambeau Field Redevelopment LLC, Turner Construction Company, Defendants.

Thomas L Shriner, Jr, Foley & Lardner, Milwaukee, for Turner Construction Company, Green Bay Brown County Professional Football Stadium District, Lambeau Field Redevelopment LLC, Defendants.

## DECISION AND ORDER

GRIESBACH, District Judge.

This action arises out of the renovation of Lambeau Field. A company that bid on the heating, venting and air conditioning contract but was not awarded the work has sued the entities in charge of the renovations, asserting improprieties in the bidding process. Defendants now contend that the only federal claim in the lawsuit should be dismissed. I agree, and order the federal claim and its state counterpart dismissed. And since the remaining claims arise solely under state law and there is no diversity of citizenship, I conclude that federal jurisdiction over them is lacking and that they too should be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Phillips Getschow Company filed this case in this court on April 30, 2002, alleging several state law claims and, more importantly for present purposes, a federal antitrust claim. According to the complaint, defendant Green Bay Brown County Professional Football Stadium District ("District") is a Wisconsin municipality created specifically for the project of renovating Lambeau Field. Defendant Lambeau Field Redevelopment, LLC ("Developer"), acting on behalf of the District, contracted for the design and construction of the Lambeau Field renovations. Defendant Turner Construction Company is the designer and general contractor of the renovations.

Phillips asserts that the Lambeau Field renovations project is a "public contract" under Wis. Stat. § 66.0901(1), which provides for a closed bidding system whereby

bids are not opened until all bids are in and a bidder may only withdraw its bid and rebid upon the project if the project is readvertised. The defendants allegedly represented to Phillips that the Lambeau Field renovations bidding was to be closed, that bid amounts were not to be disclosed until a contract was awarded, and that the lowest bid was to be accepted by the defendants.

Phillips submitted a bid for bid package No. 6 HVAC & Temperature Control. Phillips's bid was allegedly the lowest bid submitted for that bid package. According to the complaint, however, the defendants "opened the submitted bids and disseminated the information contained within the submitted bids to certain contractors, and those contractors were improperly allowed to submit a new and lower bid." (Compl.¶ 17.) In other words, the defendants "informed an invited bidder to withdraw its previously submitted and opened bid . . . [and] informed this same invited bidder of the lowest bid received by the defendants for the bid package." (*Id.* ¶¶ 22–23.) The "invited bidder" then was allowed to submit a new bid that matched or was lower than Phillips's bid, and the "invited bidder" was awarded the bid package. (*Id.* ¶ 24.)

The only federal claim in the complaint is count III, which alleges federal (and state) antitrust violations. Count III alleges that

> [t]he defendants' conduct in opening the submitted bids and disseminating the information contained within the submitted bids to certain contractors, and allowing those contractors to submit new and lower bids violates The Sherman Antitrust Act, 15 U.S.C. 1, *et seq.*, and state antitrust laws in that defendant[s'] conduct was an unreasonable restraint of trade, designed to eliminate competition and otherwise adversely affect the free market.

(*Id.* ¶ 32.) Phillips allegedly suffered damage in the form of its expense in preparing and submitting its proposed bid, "which, in the ordinary course of business and absent the defendants' illegal conduct, would have resulted in the award of the project, business income and future maintenance to the plaintiff." (*Id.* ¶ 33.) Phillips seeks treble damages, attorney fees, and costs.

Defendants have filed a motion to dismiss the federal and state antitrust claims with prejudice under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. They also seek dismissal of the remaining state law claims without prejudice under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction or under 28 U.S.C. § 1367, the supplemental claims statute.

## II. DISCUSSION

### A. Antitrust Claims

■ A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir.1997); *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir.1999).

Unreasonable restraints of trade are prohibited by The Sherman Act, 15 U.S.C. § 1, which reads in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

States, or with foreign nations, is hereby declared to be illegal." Under § 1, such an illegal restraint of trade is a felony.

While § 1 literally prohibits *every* agreement in restraint of trade, the United States Supreme Court has read § 1 to prohibit only restraints that violate the "rule of reason," i.e., practices that under all the circumstances impose an *unreasonable* restraint on competition. *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 342–43, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982). Because rule of reason analysis may entail significant litigation, the Supreme Court has also recognized per se violations of § 1. *Id.* at 343–44, 102 S.Ct. 2466. "Once experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it, it has applied a conclusive presumption that the restraint is unreasonable." *Id.* at 344, 102 S.Ct. 2466. Per se violations include, for instance, price fixing, division of markets, group boycotts, and tying arrangements. *Id.* at 344 n. 15, 102 S.Ct. 2466.

A violation of § 1 is not enough by itself, however, to support a civil lawsuit for restraint of trade. Although not specifically cited by Phillips in its complaint, 15 U.S.C. § 15, also known as § 4 of the Clayton Act, is the required vehicle for a civil lawsuit for restraint of trade or other antitrust violations. Under § 15(a), "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States." In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), the Supreme Court held that § 15(a) creates an additional element for a civil claim based upon an alleged antitrust violation. A plaintiff

> must prove more than injury causally linked to an illegal presence in the market. Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

429 U.S. at 489, 97 S.Ct. 690; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (summarizing *Brunswick Corp.*).

An antitrust injury does not arise "until a private party is adversely affected by an *anticompetitive* aspect of the defendant's conduct," *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990), i.e., "a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior," *id.* at 344, 110 S.Ct. 1884. As the courts have repeatedly noted, "[t]he antitrust laws ... were enacted for 'the protection of competition, not competitors.'" *Brunswick Corp.*, 429 U.S. at 488, 97 S.Ct. 690 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). In other words, the antitrust laws do not protect a business from a loss of profits to a competitor related to continued or increased competition. *Cargill, Inc.*, 479 U.S. at 116, 107 S.Ct. 484; *Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir.1992) ("[A] producer's loss is no concern of the antitrust laws, which protect consumers from suppliers rather than suppliers from each other. If King's defection should be called unfair competition, it is nonetheless *competition*."); *see Ehredt Underground, Inc. v. Commonwealth Edison Co.*, 90 F.3d 238, 240 (7th Cir.1996) ("Over and over, we stress that antitrust is designed to protect consumers from producers, not to protect producers from each other or to ensure that one firm gets more

of the business."). A plaintiff suing under § 15, therefore, must link its losses to a defendant's anticompetitive conduct.

Both *Brunswick Corp.* and *Atlantic Richfield Co.* are instructive on precisely this point. In *Brunswick Corp.*, the plaintiffs, three small bowling centers, alleged that Brunswick violated § 1 of the Sherman Act by acquiring and operating bowling alleys that had defaulted on the purchase of its equipment. They alleged that the acquisitions had made Brunswick the largest bowling center operator in the country, thereby creating a monopoly. The plaintiffs claimed that they were harmed because the bowling centers purchased by Brunswick would have gone out of business but for the acquisitions. The plaintiffs alleged loss in the amount of income they would have earned had the acquired centers ceased existence.

While acknowledging that the plaintiffs' injury may have been causally related to Brunswick's alleged monopolization, the Supreme Court held that permitting such injury to state a claim would "divorce[ ] antitrust recovery from the purposes of the antitrust laws." 429 U.S. at 487, 97 S.Ct. 690. At heart, the plaintiffs asserted damages from continued, not lessened, competition, and recovery for such alleged damage was in fact contrary to the antitrust laws. *Id.* at 487–88, 97 S.Ct. 690.

Similarly, in *Atlantic Richfield Co.*, the plaintiff, an independent retail marketer of gasoline, alleged that Atlantic Richfield had entered into a vertical, maximum price fixing agreement with its dealers, who were plaintiff's competitors. Plaintiff alleged that the price fixing agreement was a per se violation of § 1 and that it had suffered losses as a result of competition with Atlantic's dealers. Notwithstanding these allegations, the Supreme Court held that plaintiff had failed to allege an antitrust injury. Although it acknowledged that a vertical, maximum price fixing agreement was a per se violation of antitrust laws, the Court nevertheless found that the plaintiff had failed to· allege antitrust injury because the only losses it claimed resulted from competition with the other firms. *Id.* 495 U.S. at 336, 110 S.Ct. 1884. Because the loss claimed had not resulted from predatory pricing, the Court concluded that the plaintiff was unable to show antitrust injury. *Id.* at 339, 110 S.Ct. 1884. " 'To hold that the antitrust laws protect competitors from the loss of profits due to [nonpredatory] price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share.' " *Id.* at 338, 110 S.Ct. 1884 (quoting *Cargill, Inc.,* 479 U.S. at 116, 107 S.Ct. 484) (alteration in original); *see also id.* at 340, 107 S.Ct. 484 ("Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury.").

■ Thus, in sum, neither injury in fact nor a per se violation of § 1 equals antitrust injury. *See* id. at 339 n. 8, 341–42, 107 S.Ct. 484. The antitrust injury requirement is not met by allegations of harm from *competitive* conduct, meaning harm to only a specific competitor rather than to the market. Nor is the requirement met by allegations of harm just to the market rather than to the specific competitor. *See id.* at 339 n. 8, 107 S.Ct. 484. The competitor itself must be harmed by conduct that is anticompetitive.

As the antitrust laws protect competition rather than competitors, whether the injury to a competitor is really antitrust injury often may be ascertained by looking for related harm to consumers. The antitrust injury doctrine essentially requires a plaintiff to show that its loss comes from acts that reduce output or raise prices to consumers. *Chi. Prof'l Sports Ltd. P'ship*

*v. Nat'l Basketball Ass'n,* 961 F.2d 667, 670 (7th Cir.1992).

> If no consumer interest can be discerned even remotely in a suit brought by a competitor—if, as here, a victory for the competitor can confer no benefit, certain or probable, present or future, on consumers—a court is entitled to question whether a violation of antitrust law is being charged. If injury to a competitor, caused by wrongful conduct were enough to bring the antitrust laws into play, the whole state tort law of unfair competition would be absorbed into federal antitrust law; it has not been: unfair competition, as such, does not violate the antitrust laws.

*Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261, 266–67 (7th Cir.1984) (citation and internal quotation marks omitted).

In *Riegel Textile,* the Seventh Circuit found no consumer interest and no antitrust injury in allegations that Riegel Textile, through theft of a patent, took away a monopoly that rightfully belonged to Brunswick as the real inventor. *Id.* at 267. Whether Riegel Textile as opposed to Brunswick held monopoly power meant nothing to consumers; thus Brunswick did not suffer antitrust injury.

Similarly, examination of the remedy sought is a clue to whether there is antitrust injury. *Id.* If the plaintiff simply wants the transfer of benefits that a defendant is reaping in the market, without discernable benefits to consumers, it is likely that no antitrust injury exists. *See id.*

Claims of antitrust injury also are especially suspect "when they accuse the consumers of misunderstanding their own interests." *Stamatakis Indus.,* 965 F.2d at 471. An allegation that competition is harmed by a conspiracy, in which the consumer is involved, to steal business from one firm and give it to another, for instance, is suspect if the consumer must be deemed irrational by causing itself to pay higher prices in the future. *See id.* at 471–72; *cf. Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1109 (7th Cir.1984) ("[I]t is inherently implausible that Ford, as a buyer ..., would conspire in order to allow its new carrier, Nu–Car, to charge noncompetitive prices; the plaintiffs are alleging, in essence, that Ford conspired to injure itself.").

In light of these principles, it is apparent that Phillips has alleged no antitrust injury. Phillips's allegations in no way assert anticompetitive conduct. The complaint asserts that the alleged bidding process was "designed to eliminate competition and otherwise adversely affect the free market" (Compl.¶ 32), but no elimination of competition is apparent, and in response to the motion to dismiss, Phillips identifies none. Phillips merely asserts in conclusory fashion that the vertical bid-rigging scheme had "inherent anti-competitive consequences." (Pl.'s Mem. of Law in Opp'n at 2.) But the facts Phillips alleges in the complaint actually resulted in *increased* competition, and it is the increased competition that caused Phillips harm. Phillips was harmed when a competitor was allowed to step in and submit another bid. Whether the competition was proper or improper makes no difference as far as the antitrust claim is concerned. As described above, damages from continued or increased competition are not the type of harm the antitrust statutes address.

As for adverse effects on the market, again no such harm is apparent and Phillips identifies none. In the market of Lambeau Field renovation (assuming the market can be so defined), the buyer paid the same or a lower price than Phillips wanted, which cannot be considered an adverse effect at all. Assuming Phillip's bid was the same as the "invited bidder's," the award of the bid was immaterial to the

consumer, just as the identity of the patent holder in *Riegel Textile* was immaterial to the public in that case. Assuming Phillip's bid was in fact higher than the "invited bidder's," Phillip's desired remedy—imposing damages on the defendants for their failure to accept Phillip's higher bid—would violate the fundamental purpose of antitrust law, which is to protect consumers from producers; not to protect producers from each other or to ensure that one firm gets more of the business. Nothing in this alleged bid-rigging scheme interfered with the freedom of the buyer or actual seller to buy and sell in accordance with their own judgment.

Phillips has argued no adverse effects at all in the broader market of construction. No allegations or even suggestions of predatory pricing are made such that the acceptance of this one bid could harm market competition in the future. And again, the main question for antitrust injury is whether the plaintiff has suffered an injury that "reflects the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp.*, 429 U.S. at 489. Neither the facts alleged by Phillips, nor reasonable inferences to be drawn therefrom, show such an injury. In fact, they show the absence of antitrust injury.

Phillips's opposition to the motion to dismiss focuses mainly on whether vertical bid rigging schemes are per se violations of § 1. As *Atlantic Richfield Co.* makes clear, however, the existence of a per se violation is not enough to allow a plaintiff to recover damages in a civil action. There must be antitrust injury as well. The cases cited by Phillips regarding bid-rigging or price fixing—*United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir.1982); *M.C. Mfg. Co. v. Tex. Foundries, Inc.*, 517 F.2d 1059 (5th Cir. 1975); *Sunny Hill Farms Dairy Co. v. Kraftco Corp.*, 381 F.Supp. 845 (E.D.Mo.

1974)—all predate *Atlantic Richfield Co.*, and two predate even *Brunswick Corp.* The two cases predating *Brunswick Corp.* did not discuss antitrust injury at all—they incorrectly state that only a causal connection between the antitrust violation and the alleged injury must exist, rather than an injury that the antitrust laws were meant to address. *See M.C. Mfg. Co.*, 517 F.2d at 1063–64; *Sunny Hill Farms Dairy Co.*, 381 F.Supp. at 851, 857. The case postdating *Brunswick Corp.* also does not discuss antitrust injury, as it was a federal prosecution under 15 U.S.C. § 1 rather than a private lawsuit under 15 U.S.C. §§ 1 and 15. *See Portsmouth Paving Corp.*, 694 F.2d at 315. Only a private lawsuit raises the § 15(a) requirement of antitrust injury. Moreover, the bid rigging scheme in *Portsmouth Paving Corp.* was horizontal between competitors and had the undisputed effect of forcing the government purchasers of roadway construction and surface paving to pay more for those services than had there been free competition. *See id.* at 317, 319. Thus, even if antitrust injury had been required it would have been found, as competition was being restricted and as a result the consumer plaintiff was paying higher prices for the services it was purchasing.

The other case relied upon by Phillips—a 1973 opinion by Judge John W. Reynolds from this district—merely describes the undisputed proposition that there is no heightened or special pleading standard for antitrust claims. *See Kolb v. Chrysler Corp.*, 357 F.Supp. 504, 507 (E.D.Wis. 1973). The defendants' motion to dismiss attacks the facts of the complaint on the merits under Fed.R.Civ.P. 12(b)(6), not on any defects in particularized pleading. Moreover, *Kolb* does not support the use of any *lesser* standard for examining an antitrust complaint than other complaints. The Rule 12(b)(6) standard described above applies to this case as it does to any

other. *See also Car Carriers, Inc.*, 745 F.2d at 1106 ("The pleader may not evade these [Rule 12(b)(6)] requirements by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.' ").

In sum, even taking all of Phillips's alleged facts and the per se violation argument as true, no antitrust injury can be found in this case. The federal antitrust claim must therefore be dismissed. But even if Phillips were able to show an antitrust injury, its claim would nevertheless fail because the facts alleged show no violation of § 1 occurred.

Phillips argues that the allegations in its complaint show that the defendants "conspired between themselves, together with their contractor of choice, to form a vertical bid-rigging scheme which deprived Plaintiff of its competitive right to contract for the Lambeau Field Renovation." "Such schemes," it argues, "are inherently anti-competitive and *per se* violations of the Sherman Antitrust Law." (Pl.'s Mem. of Law in Opp'n, at 3) In support of its argument, Phillips cites *Portsmouth Paving Corp.*, and *Sunny Hill Farms Dairy Co.* Neither case supports its argument.

*Portsmouth Paving Corp.*, as noted above, involved an agreement by contractors who were ostensibly competing against one another for the work that had the effect of forcing purchasers of road construction and paving services to pay inflated prices for those services. Under the scheme devised by the contractors, they would discuss their bids for various projects among themselves prior to submitting them, agree on which of them would be the low bidder on which project, and then arrange for the others to refrain from bidding or to submit intentionally high bids on that project so that it would be awarded to the chosen contractor at an inflated price. This is what is commonly meant by the term "bid rigging."

The allegations in this case, however, are wholly dissimilar. Defendants are the purchasers, not the suppliers of construction services. And according to the complaint, they improperly, even illegally, disclosed a sealed bid submitted by Phillips so that a favored contractor would have an opportunity to reduce and resubmit its bid, thereby allowing the other contractor to win the contract. While such conduct, if proved at trial, may very well result in defendants' liability to Phillips on one of its state law claims, it does not amount to a violation of § #1. At most, the allegations of the complaint show a favoritism by defendants toward one of Phillips' competitors. Without more, however, the fact that a buyer favored one supplier over another does not violate § #1. "The freedom to switch suppliers lies close to the heart of the competitive process that the antitrust laws seek to encourage." *NYNEX v. Discon, Inc.*, 525 U.S. 128, 136, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). "At the same time, other laws, for example, 'unfair competition' laws, business tort laws, or regulatory laws, provide remedies for various 'competitive practices thought to be offensive to proper standards of business morality.' " *Id.* at 137, 119 S.Ct. 493 (quoting 3 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 651d at 78 (1996)).

*Sunny Hill Farms Dairy Co.*, the other case cited by Phillips in support of its claim of a per se violation, is similarly inapposite. That case involved a horizontal price fixing agreement between competing milk suppliers. The agreement also provided for a reduction in the plaintiff's in-store display space in favor of that of the defendant suppliers in retail stores operated or controlled by one of the defen-

dant suppliers. The plaintiff alleged that it had suffered reduced sales as a result of the pricing and display space agreements. Here, by contrast, while Phillips has characterized the defendants' alleged conduct as "price fixing," it has actually alleged only that the defendants' improperly disclosed what should have been a sealed bid. Although Phillips alleges that this allowed its competitor to submit a reduced bid, there is no allegation that the price was "fixed," except in the sense that prices are normally fixed, i.e., by voluntary agreement of the buyer and seller. Also unlike this case, *Sunny Hill Farms Dairy Co.* involved principally a horizontal agreement, one that was between suppliers. Here, the allegedly illegal agreement is between the defendant purchaser and an unnamed supplier. Nothing in the complaint suggests how such an agreement could result in harm to competition or a relevant antitrust market. Accordingly, I conclude that the complaint fails to allege an antitrust violation, either per se or under the rule of reason, and for this reason also, the federal claim must be dismissed.

■ Analysis of the state antitrust claim is generally guided by federal court decisions on federal antitrust law. *Lerma v. Univision Communications, Inc.*, 52 F.Supp.2d 1011, 1015–16 (E.D.Wis.1999); *see Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 190 Wis.2d 650, 665, 529 N.W.2d 905 (1995); *Am. Med. Transp. of Wis., Inc. v. Curtis–Universal, Inc.*, 148 Wis.2d 294, 299, 435 N.W.2d 286 (Ct.App. 1988), *rev'd on other grounds*, 154 Wis.2d 135, 452 N.W.2d 575 (1990). Phillips offers no argument that in regard to antitrust injury the federal law and state law differ. Therefore, the state antitrust claim fails for lack of antitrust injury as well.

## B. Supplemental State Law Claims

■ With the only federal claim in this case dismissed, I must address the contin-

ued jurisdiction over the supplemental state law claims. Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367. Pursuant to § 1367(c), I may decline to exercise supplemental jurisdiction over a state law claim if I have dismissed all federal claims. When all federal claims are dismissed before trial, the usual and preferred course is to dismiss the supplemental state law claims without prejudice, especially when there has been almost no discovery or pretrial proceedings. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir.1997). Other than regarding the state antitrust claim, for which further state court proceedings would be an unnecessary burden on the state courts, I see no need to deviate from the presumed route in this case. Phillips contends that it may have a statute of limitations problem if I dismiss the remaining state law claims, but the supplemental jurisdiction statute sufficiently addresses that. *See* 28 U.S.C. § 1367(d).

## III. CONCLUSION

Because the facts alleged in the complaint establish that Phillips has not suffered antitrust injury and no antitrust violation occurred, the federal and state antitrust claims must be dismissed on the merits. I decline supplemental jurisdiction over the remaining state law claims.

THEREFORE, IT IS ORDERED that the defendants' motion to dismiss is granted.

IT IS ORDERED that the federal and state antitrust claims are dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

FURTHER, IT IS ORDERED that the remaining state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

The clerk of court is directed to enter judgment accordingly.