COOL WIND VENTILATION
CORP., Plaintiffs,

v.

SHEET METAL WORKERS INTER-
NATIONAL ASSOCIATION, Local
Union No. 28; John Harrington, Presi-
dent and Business Manager of Local
28, Sheet Metal Industry Labor Man-
agement Committee, by its adminis-
trator Thomas Doherty; Sheet Metal
and Air Conditioning Contractors As-
sociation of New York City, Inc.,
Sheet Metal and Air Conditioning
Contractors Association of Long Is-
land, Inc.; Nelson Air Device Corp.
and Karo Sheet Metal, Inc., Defen-
dants.

No. CV 00–3678.

United States District Court,
E.D. New York.

April 16, 2001.

White & Kretzing, P.C., By Laurel R. Kretzing, Westbury, NY, for Plaintiff.

William H. Englander, P.C., By William H. Englander, Westbury, NY, for Plaintiff.

Smetana & Avakian, By Gerard C. Smetana, Chicago, IL, for Plaintiff.

Roy Barnes, P.C., By Wendell Shepherd, Elmsford, NY, for Defendants Sheet Metal Workers International Association, Local Union 28 and John Harrington.

Paul, Weiss, Rifkind, Wharton & Garrison, By Sidney S. Rosdeitcher, Esq., John F. Baughman, New York City, for Defendant Sheet Metal Industry Labor Management Committee, by its Administrator Thomas Doherty.

Law Offices of Howard E. Gilbert, By Howard E. Gilbert, Melville, NY, for Defendant Sheet Metal and Air Conditioning Contractors Association of Long Island, Inc.

Rubin Baum, LLP, By Martin R. Gold, Esq., Martin J. Schwartz, New York City, for Defendant Sheet Metal and Air Conditioning Contractors Association of New York City, Inc.

Proskauer Rose LLP, By Jerold D. Jacobson, Daniel R. Halem, New York City, for Defendant Karo Sheet Metal, Inc.

Ettelman & Hochheiser, P.C., By Gary Ettelman, Garden City, NY, for Defendant Nelson Air Device Corp.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an case commenced by Plaintiff Cool Wind Ventilation Corp. ("Cool Wind" or "Plaintiff") alleging, primarily, antitrust violations. The named defendants include a labor union, its president and business manager, two multi-employer collective bargaining entities and two individual companies (collectively "Defendants"). Plaintiff's complaint alleges that defendants have entered into a conspiracy to restrain trade and monopolize the market in the

sheet metal and duct work industry in the City of New York and Nassau and Suffolk Counties. Also alleged are violations of the National Labor Relations Act (the "Labor Act") and state law claims for tortious interference with contract.

Presently before the court are the motions of all Defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss the Labor Act claims against all defendants other than the Union is granted. The motions are, in all other respects, denied.

## BACKGROUND

### 1. Factual Background

The facts forming the basis of Plaintiff's claims are set forth in the complaint. Taking those allegations in the light most favorable to the non-moving party (Plaintiff), as required in the context of this motion directed to the pleadings, the facts are as follows.

### A. The Parties

Cool Wind is a company that is engaged in the business of designing, manufacturing and installing sheet metal duct work used in heating, ventilating and air conditioning ("HVAC") systems. Cool Wind is a union shop; it has a collective bargaining agreement pursuant to which it employs members of the International Brotherhood of Teamsters, Local Union 1205 (the "Teamsters").

Named as defendants here are: (1) the Sheet Metal Workers International Association, Local Union No. 28 ("Local 28" or the "Union") and its president and business manager, John Harrington ("Harrington"); (2) the Sheet Metal Industry Labor Management Committee by its Administrator, Thomas Doherty (the "Labor–Management Committee"); (3) the Sheet Metal and Air Conditioning Contractors Association of New York City, Inc., a multi-employer bargaining entity responsible for negotiation of collective bargaining agreements between employers in New York City and Local 28 ("SMACNA–NY"); (4) SMACNA–NY's Long Island counterpart, Sheet Metal and Air Conditioning Contractors Association of Long Island, Inc. ("SMACNA–LI")(New York and Long Island entities referred to collectively herein as "SMACNA"); (5) Nelson Air Device Corp., a mechanical contractor ("Nelson") and (6) Karo Sheet Metal Corporation, a contractor engaged in the same business as Cool Wind ("Karo").

### B. The Business of Cool Wind and the Allegations of the Complaint

Cool Wind manufactures sheet metal duct work through which heated or air conditioned air flows and is ventilated throughout buildings. Cool Wind is sometimes employed directly by general contractors but is more typically employed as a subcontractor to HVAC mechanical contractors working on construction projects.

According to the allegations of the complaint the various Defendants have conspired with each other to restrain trade and monopolize the market for sheet metal duct work in large construction projects in the New York, Nassau and Suffolk areas.

The specific relevant market identified in the complaint is defined as:

the design, manufacture and installation of sheet metal duct work for heating, ventilation and air conditioning applications in commercial buildings in the geographical area of the City of New York and the counties of Nassau and Suffolk, each such job costing more than $150,000.

Jobs in the relevant market are alleged to have a total yearly cost of more than 700 million dollars, such figure represent-

ing the sum of the cost of approximately 3,500 individual jobs. The geographic basis for the relevant market lies in the alleged fact that the region referred to is the area over which Local 28 has established a stranglehold over jobs and destroyed the possibility of competition. The monetary limit placed on the market definition is based upon the allegation that while Local 28 has attempted to monopolize the entire industry, it has been successful only in monopolizing larger, more lucrative jobs. Local 28 is alleged to have quelled all competition for such contracts and excluded Cool Wind and other "non-Local 28" employers from obtaining the contracts described.

The factual allegations supporting Plaintiff's claims are contained in a forty-eight page complaint and are highly detailed. The court will not reiterate all facts alleged but will only refer to those necessary to draw a brief description of the conspiracy alleged.

As noted, Cool Wind has a collective bargaining agreement with the Teamsters. It has no agreement with Local 28. Local 28 is alleged to be the only sheet metal contractor that is associated with the Building Trades Council of New York City (the "Council"). According to Plaintiff, Local 28 takes the position that its membership in the Council renders it the only union that may perform sheet metal work in the City of New York. Because of its membership in the Council, Local 28 is alleged to be able to garner the support of other unions and employers to bar Plaintiff's employees from working on construction projects and to have Plaintiff's workers removed from such projects. Plaintiff supports these allegations with, *inter alia,* a description of a project at the United Nations Plaza in New York City from which its employees were ousted.

In addition to alleging the existence of agreements between Local 28 and other Council member unions, Plaintiff alleges agreements between direct competitors employing Local 28 workers (such as Defendant Karo) and Local 28, to exclude Cool Wind and other non-Local 28 sheet metal contractors from the relevant market. Plaintiff alleges a factual situation in which a Karo principal is said to have threatened to remove his Local 28 workers from various jobs being performed for a particular mechanical contractor unless that contractor removed Cool Wind from the sole job it was performing for the contractor.

The complaint contains additional factual allegations. For example, defendant SMACNY is asserted to be engaged in the business of inducing employees of non-Local 28 contractors to leave their jobs in favor of Local 28 contractors. Plaintiff also alleges the use of "target" funds, intended to combat non-union competition, to quell competition with Plaintiff. There are several other factual scenarios discussed in the complaint which the court will not here discuss. Suffice it to say that Plaintiff has tied defendants together, in one way or another, to support the allegations of a conspiracy to exclude Cool Wind, and all sheet metal contractors not employing Local 28 labor, from the relevant market.

### C. The Motions to Dismiss

Defendants move individually and as a group to dismiss Plaintiff's complaint for failure to state a claim. The majority of the defense arguments have been presented to the court in the form of a joint motion submitted by all Defendants (the "Joint Motion"). Grounds raised in the Joint Motion include the failure to plead a *per se* violation of the antitrust laws and the failure to allege a proper relevant market or injury to competition. Dismissal of monopolization claims are sought on the

ground that Plaintiff has alleged neither a proper monopoly nor the requisite intent to monopolize. The Joint Motion also seeks dismissal of state law claims on preemption grounds. Finally dismissal of all Labor Act claims is sought as against all non-union defendants.

The Labor Management Committee, Karo, Nelson and SMACNA have each submitted individual motions to dismiss on the ground that the complaint fails to allege sufficient factual allegations to state a claim against these defendants. Finally, Local 28 and Harrington have submitted a motion seeking dismissal of Plaintiff's state law claims.

In response to the motions, Plaintiff argues that it has alleged facts in the complaint sufficient to survive a motion to dismiss.

### DISCUSSION

#### I. General Legal Principles

##### A. Standards for Motion to Dismiss

A motion to dismiss is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). When ruling on a motion to dismiss, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (E.D.N.Y.2000).

#### II. Disposition of the Joint Motion

The Joint Motion first seeks dismissal of Plaintiff's antitrust claims. Such claims are alleged in the form of violations of Section 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Additionally, the Joint Motion seeks dismissal of state law tort claims and Labor Act claims. The court considers each argument in turn.

#### A. Section 1 of the Sherman Act

##### 1. Legal Principles

 To state a claim pursuant to Section 1 of the Sherman Act, a plaintiff must show a combination or concerted action between at least two distinct entities which action constitutes an unreasonable restraint on trade. *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 95–96 (2d Cir.1998); *Capital Imaging Assoc., P.C., v. Mohawk Valley Medical Assoc., Inc.*, 996 F.2d 537, 542 (2d Cir.1993). The restraint alleged must be unreasonable either under a *"per se"* analysis or under the "rule of reason." *Id.; see Bogan v. Hodgkins*, 166 F.3d 509, 513 (2d Cir.), *cert. denied*, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999).

 *Per se* illegal conduct is that which is so egregious as to constitute a violation of law without the necessity of showing an effect on competition. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133–34, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Bogan*, 166 F.3d at 513; *Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902, 906 (E.D.N.Y.1986). Among conduct falling within the *per se* rule are price fixing, territorial market division and certain group boycotts involving concerted refusals to deal. *NYNEX Corp.*, 525 U.S. at 133; *Capital Imaging*, 996 F.2d at 542–43. Only conduct that is "manifestly anticompetitive" is designated as *per se* illegal. The majority of cases do not fall within the

*per se* category. *Bogan,* 166 F.3d at 514; *see also CDC Technologies, Inc. v. IDEXX Laboratories, Inc.,* 186 F.3d 74, 79 (2d Cir.1999)(only a "handful" of practices are *per se* illegal); *National Camp Assoc., Inc. v. American Camping Assoc., Inc.,* 2000 WL 1844764 *5 (S.D.N.Y. December 15, 2000) (noting Supreme Court's refusal to extend the class of agreements to which a *per se* analysis applies).

■ Conduct that does not fall within the *per se* rule is subject to the rule of reason analysis. Application of this doctrine requires a plaintiff to prove not mere injury to plaintiff as a competitor but antitrust injury, *i.e.,* actual damage to competition within the relevant market. *Capital Imaging,* 996 F.2d at 542–43; *Gregoris Motors,* 630 F.Supp. at 906. A plaintiff that fails to demonstrate actual injury to competition may nonetheless show antitrust injury by showing that the defendant possessed "market power,"—the ability to inhibit competition on a market-wide basis. Such power is defined as the power to "raise prices significantly above the competitive level without losing all of one's business." *CDC Technologies,* 186 F.3d at 81, quoting, *Capital Imaging,* 996 F.2d at 546; *see Tops Markets,* 142 F.3d at 96.

■ Alleging a proper relevant market is critical to a plaintiff's antitrust case. *Hayden Pub. Co., Inc. v. Cox Broadcasting Corp.,* 730 F.2d 64, 69–70 (2d Cir.1984) (proof of the "impact upon competition in a relevant market is an absolutely essential element of the rule of reason case"), quoting, *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 291 (9th Cir.1979). An appropriate relevant market is one is which there is reasonable interchangeability in use between a product and substitutes. *Hayden Publishing,* 730 F.2d at 70–71; *Pepsico, Inc. v. Coca–Cola Co.,* 1998 WL 547088 *5 (S.D.N.Y. August 27, 1998); *see United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 393, 76 S.Ct. 994, 100 L.Ed.

1264 (1956) (market definition depends upon "how far buyers will go to substitute one commodity for another"). Commodities that are reasonably interchangeable for the same or similar uses are considered to be in the same market for antitrust purposes. *Hayden Publishing,* 730 F.2d at 70. Because market definition involves determination of interchangeability or the "cross-elasticity" of demand, the question of whether or not plaintiff has set forth a properly defined market usually involves resolution of questions of fact. *E.g., Pepsico, Inc. v. Coca–Cola Co.,* 1998 WL 547088 *6 (S.D.N.Y. August 27, 1998).

■ Application of the rule of reason analysis requires a plaintiff initially, to show proof of market injury. The burden then shifts to defendant to show legitimate pro-competitive reasons for the challenged conduct. Thereafter, it is for the plaintiff to demonstrate that defendant's objective could have been furthered by actions less prejudicial to competition. *Capital Imaging,* 996 F.2d at 543.

■ Like the determination of the relevant market, application of a rule of reason analysis is necessarily fact-specific. *CDC Technologies,* 186 F.3d at 80; *KMB Warehouse Distribs., Inc. v. Walker Mfg. Co.,* 61 F.3d 123, 127 (2d Cir.1995) (under rule of reason analysis, "factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited"), quoting, *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). To reach a proper determination "the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed and its effect, actual or probable." *Capital Imaging,* 996 F.2d at 543, quoting, *Chicago Bd. of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

The "factfinder must decide the overarching question of whether the challenged action purports to promote or destroy competition." *Capital Imaging*, 996 F.2d at 543.

### 2. Plaintiff States A Claim Under Section 1 of the Sherman Act

Plaintiff argues that it alleges group boycott conduct sufficient to apply a *per se* analysis as well as conduct that runs afoul of a rule of reason analysis. Both theories are sufficiently alleged.

■ As to the *per se* illegal boycott, the court holds that the facts alleged may well constitute a type of illegal agreement described by the Supreme Court in *Fashion Originators' Guild of America, Inc. v. FTC*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941) and discussed by the Court in *NYNEX*, 525 U.S. at 135–36, 119 S.Ct. 493. Resolution of whether or not such an illegal agreement exists among the defendants here requires a factual inquiry, however, that the court cannot now undertake. Ultimately, the facts may not bear out such a finding. The court holds only that such a claim must await further factual development.

■ As to the rule of reason theory, the court holds, as a threshold matter, that the relevant market alleged by Plaintiff is sufficient to state a claim at this juncture. Plaintiff has identified adequately both a relevant product and a relevant geographic market. While Defendants take issue with Plaintiff's definition—particularly its limitation to jobs costing more than $150,000—the court finds it inappropriate to reject Plaintiff's market on the pleadings. At this stage, the market alleged is reasonable.

After the taking of testimony, the court may well hold that Plaintiff's limitation on the market does not make economic sense. That determination, however, cannot be made at this time. For these reasons, the court declines to dismiss for failure to allege a proper relevant market. *Accord National Communications Association v. AT & T*, 808 F.Supp. 1131, 1134 (S.D.N.Y. 1992) (motion to dismiss for improper market definition appropriate only where market alleged makes "no economic sense under any set of facts"), quoting, *Theatre Party Associates v. Shubert Org., Inc.*, 695 F.Supp. 150, 154 (S.D.N.Y.1988); *Michael Anthony Jewelers, Inc. v. Peacock Jewelry, Inc.*, 795 F.Supp. 639, 647 (S.D.N.Y.1992)(motion to dismiss based upon improper market definition appropriate only where proposed market definition is "patently implausible").

Plaintiff's restraint of trade argument alleges conduct similar to that held subject to the antitrust laws in cases like *Allen Bradley Co. v. Electrical Workers*, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945) and *Connell Construction Co., Inc. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). In *Allen Bradley*, the Court condemned agreements requiring that contractors purchase equipment only from manufacturers that had agreements with a particular union. *Allen Bradley*, 325 U.S. at 799–801, 65 S.Ct. 1533. In *Connell Construction*, the Supreme Court held that a union could violate the antitrust laws by demanding that a general contractor employ only subcontractors that employed union members. *Connell Construction*, 421 U.S. at 624–25, 95 S.Ct. 1830; *see also Wickham Contracting Co., Inc. v. Board of Educ. of the City of New York*, 715 F.2d 21, 27 (2d Cir.1983) (union antitrust liability could be established by showing that the union demanded that work be contracted exclusively to firms using particular union's workers). The conduct alleged here appears to fall within the type of conduct prohibited by the cases referred to immediately above and therefore states a claim.

The court notes that the issue of whether or not particular conduct constitutes a violation of Section 1 of the Sherman Act, either under a *per se* or rule of reason analysis, requires a clear understanding of the factual circumstances of the particular industry alleged to have been harmed. Additionally, the court must examine the conduct of the parties to determine a variety of issues, not the least of which is intent. Such matters are particularly ill-suited for disposition in the context of a motion to dismiss. Taking all of Plaintiff's allegations as truthful, the court holds that Cool Wind has more than satisfied the requirements for pleading a violation of Section 1 of the Sherman Act. All grounds raised in the Joint Motion in support of dismissal of such a claim are rejected.

### B. *Section 2 of the Sherman Act: Monopolization Claims*

#### 1. *Legal Principles*

■ In addition to pleading a violation of Section 1 of the Sherman Act, Plaintiff alleges a Section 2 violation in the form of alleged monopolization and intent to monopolize. Like Plaintiff's Section 1 claim, Plaintiff's Section 2 claim must be supported by a showing of an appropriate relevant market and antitrust injury. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977); *Michael Anthony Jewelers,* 795 F.Supp. at 645. Additionally, Section 2 requires a showing of: "(1) possession of monopoly power in the relevant market and (2) the willful acquisition of that power as distinguished from the growth or development of a business as a consequence of a superior product, business acumen or historical accident." *Tops Markets,* 142 F.3d at 97, quoting, *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *Michael Anthony Jewelers,* 795 F.Supp. at 645.

■ "Monopoly power, also referred to as market power, is the power to control prices or exclude competition." *Tops Markets,* 142 F.3d at 96–97, quoting, *E.I. duPont de Nemours,* 351 U.S. at 391, 76 S.Ct. 994. A plaintiff shows monopoly power directly by evidence of actual price control or exclusion of competition. Market power is shown inferentially by demonstrating that the defendant has a large percentage of the relevant market. *Tops Markets,* 142 F.3d at 98. An inference of monopoly power can be made only after "full consideration of the relationship between market share and other relevant market characteristics," such as strength of competition, probable development in the industry, barriers to entry, the nature of the alleged anticompetitive conduct and the elasticity of consumer demand. *Id.* at 98.

■ A properly pled claim of attempted monopolization requires a showing of predatory or anticompetitive conduct along with a: "(1) dangerous probability of success in monopolizing a given product market and (2) specific intent to destroy competition or build monopoly." *Nifty Foods Corp. v. Great Atlantic and Pacific Tea Co., Inc.,* 614 F.2d 832, 841 (2d Cir.1980), quoting, *Times–Picayune Publishing Co. v. United States,* 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); *see Tops Markets,* 142 F.3d at 98.

#### 2. *Plaintiff States A Claim Under Section 2 of the Sherman Act*

■ The Joint Motion's attack to the Section 2 Sherman Act claim finds fault with Plaintiff's defined relevant market as well as with Cool Wind's factual characterization of each Defendants' role in that market. As set forth above, the court rejects any attack based upon an improperly drawn relevant market. As to the latter ground urged in support of dismiss-

al, the court is in no position, at this juncture, to properly characterize the role played by each party. The complaint is sufficient to state a claim and all motions to dismiss the monopolization claims are hereby denied.

## C. *State Law Tort Claims*

■ The Joint Motion seeks dismissal of state law tortious interference claims on the ground that such claims are preempted by federal labor law pursuant to *San Diego Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In *Garmon,* the Supreme Court held that state law may not be used to exert jurisdiction over claims that are based upon activities protected by Section 7 of the Labor Act or those prohibited as unfair labor practices under Section 8 of the Labor Act. In such cases, state law must defer to the "exclusive competence" of the National Labor Relations Board—even in cases where the NLRB has not exercised its jurisdiction. *San Diego Trades Council,* 359 U.S. at 245, 79 S.Ct. 773. Plaintiff counters dismissal arguing that *Garmon* preemption applies only to the Union defendant and, further, that it has alleged tortious conduct beyond that which might be prohibited as an unfair labor practice by the Labor Act.

■ The court disagrees with the notion that *Garmon* applies only to the Union defendant. Although not decided by the Second Circuit, the court agrees with the Courts of Appeal for the Fourth and Ninth Circuit and holds that preemption depends not on the identity of the defendant but, rather, on the nature of the claim asserted. *See Richardson v. Kruchko & Fries,* 966 F.2d 153, 156–57 (4th Cir.1992); *Lumber Production Industrial Workers Local 1054 v. West Coast Industrial Relations Association, Inc.,* 775 F.2d 1042, 1049 (9th Cir.1985); *accord Volentine v. Bechtel, Inc.,* 27 F.Supp.2d 728, 735–36

(E.D.Tex.1998), *aff'd mem.,* 209 F.3d 719 (5th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 46, 148 L.Ed.2d 16 (2000).

■ Accordingly, to the extent that Plaintiff's tortious interference claims are based upon the same facts that would give rise to a Labor Act claim, the court would dismiss such claims. Plaintiff argues, however, that this is not the case and creates a factual issue. The procedural posture of the case, therefore, makes dismissal premature. The court will await full factual development before ruling on the preemption issue. If after such development it appears that the claims are factually duplicative, the court will dismiss the state law tortious interference claims. The court defers decision on this issue, however, and, at this time, denies the motion to dismiss the state law claims.

## D. *Labor Act Claims*

Defendants argue that claims pursuant to the Labor Act may be asserted only against Local 28 and are therefore improperly asserted against the remaining defendants. Plaintiff makes no response to this particular argument and apparently concedes the point. Accordingly, to the extent that any Labor Act claims are asserted against any defendant other than Local 28, such claims are dismissed.

## III. *All Other Motions*

■ Several defendants have submitted memoranda of law in support of individual motions to dismiss. These memoranda argue that the factual allegations of the complaint are insufficient to state a claim against each submitting defendant. To survive a motion to dismiss, an antitrust plaintiff alleging conspiracy must set forth "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *In re Nine West*

*Shoes Antitrust Litigation,* 80 F.Supp.2d 181, 191 (S.D.N.Y.2000). The court has reviewed each submission and holds that questions of fact preclude the grant of any motion to dismiss. Accordingly, each individual motion to dismiss is denied.

### CONCLUSION

For the reasons set forth above, the motion to dismiss the Labor Act claims against all defendants other than the Union is granted. The motions to dismiss are, in all other respects, denied.

The parties are directed to contact the Magistrate Judge assigned to this matter so that discovery may proceed. The Clerk of the Court is to terminate all motions to dismiss as set forth herein.

SO ORDERED.