ELSEVIER INC., Blackwell Publishing, Ltd., Wiley Periodicals, Inc., Wiley–Liss, Inc., Informa UK Ltd., Informa USA, Inc., and American Chemical Society, Plaintiffs,

v.

W.H.P.R., INC., Richard B. Hayat, Randi Hayat, Educo Periodicals Co., Inc., Barbara Pessina, Russell Pessina, Patricia Anspach, Thomas Anspach, Klavdiya A. Lokshina, and John Doe Nos. 1–50, Defendants.

No. 09 Civ. 6512(CM).

United States District Court, S.D. New York.

Feb. 19, 2010.

Laura Jean Scileppi, William Irvin Dunnegan, Dunnegan LLC, New York, NY, for Plaintiffs.

Michael S. Re, Robert Stephen Cohen, Stephen Justin Ginsberg, Moritt Hock Hamroff & Horowitz LLP, Garden City, NY, Terence Joseph Gallagher, Jones Garneau, L.L.P., Stamford, CT, Michael C. Rakower, David Emanuel Miller, Law Office of Michael C. Rakower, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER DISMISSING THE COMPLAINT WITHOUT PREJUDICE AND WITH LEAVE TO AMEND

McMAHON, District Judge:

### INTRODUCTION

This case alleges, in substance, that Defendants conspired to defraud Plaintiffs—the publishers of many of the world's leading scientific, technical and medical journals—by placing orders for the purchase of thousands of these journals at a lower or discounted "individual" subscription rate, rather than the higher "institutional" rate, and then reselling the journals to institutions for more than the individual rate. Plaintiffs assert a variety of state law claims—breach of contract, fraud, even conversion—and then wrap them in the trappings of the Racketeering and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO").

Allegations of racketeering have been described as a "thermonuclear device." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y.1996) (*quoting Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir.1991)), *aff'd* 113 F.3d 1229 (2d Cir.1997). The mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants. As a result, courts are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation.

All of the remaining defendants, W.H.P.R., Inc. ("W.H.P.R."), Richard B. Hayat ("Hayat"), Randi Hayat, Thomas Anspach, Patricia Anspach and Klavdiya Lokshina (collectively, "Defendants"), have moved to dismiss the RICO claims on the ground that they are defectively pleaded, in that they are both lacking in particulars (and thus fail Federal Rule of Civil Procedure 9(b)), and in failing to state a claim (Rule 12(b)(6)). Additionally, defendants Thomas and Patricia Anspach (the "Anspachs" or "Anspach Defendants") move to dismiss on the ground that the Court lacks personal jurisdiction over them. All Defendants also move to dismiss the various state law claims that have been asserted against them, with the exception that W.H.P.R. and the Hayats do not move to dismiss the breach of contract claims asserted against them in Counts V and VI.

Because there is at least one defect in the RICO pleading as to each defendant, the motions to dismiss the RICO claims are granted, and the complaint is dismissed, albeit without prejudice and with leave to replead. The other motions are denied without prejudice to their renewal once an amended pleading is served.

## BACKGROUND

### I. Allegations in the Complaint and RICO Case Statement

The following allegations are found in Plaintiffs' complaint (the "Complaint") and/or their RICO Case Statement.

Plaintiffs publish journals that consist primarily of peer-reviewed articles, written by one or more scholars, often based on original research. (Compl. ¶ 19.) Plaintiffs invest heavily in publishing their journals, incurring substantial costs for producing their products. (Id. ¶ 20.) Plaintiffs sell their journals almost entirely through annual subscriptions, on a calendar year basis. They charge institutions "full" rates (or higher prices) and individuals "discounted" rates (or lower prices). They do the latter often as an accommodation to members of scholarly societies that sponsor or own the journals. (Id. ¶ 21.)

Plaintiffs are the "sole source" of their journals, which I gather means that they control the distribution of these journals. (Id. ¶ 22.) However, they do sell subscriptions through subscription agents, including defendant W.H.P.R. Subscription agents act as intermediaries between institutions (their customers) and journal publishers. (Id. ¶ 24.)

When an individual orders a subscription to one of Plaintiffs' journals, the invoice and purchase order form (the contract) contains a clause that forbids the purchaser from reselling the journal to an institution or from using it as a library copy (i.e., accessible to persons other than the purchaser). (See id. ¶ 23.) When a subscription agent places an order, Plaintiffs rely on the agent to identify truthfully the type of subscription needed, based on whether the ultimate purchaser is an individual or institution. (Id. ¶ 24.) The terms and conditions for orders placed on behalf of "library customers" (institutional purchasers) require that the agent identify the end user of each journal ordered at the time the order is placed. (Id. ¶ 25.) W.H.P.R.'s trade association strictly forbids a subscription agent from taking out personal subscriptions on behalf of institutions, rather than charging the institutional rate. (Id. ¶ 26.)

Plaintiffs allege that they take orders for subscriptions by mail, telephone, facsimile and the internet. (Id. ¶ 28.)

Plaintiffs allege that Defendants have engaged in fraud and conspiracy by purchasing individual subscriptions from Plaintiffs at discounted rates and then selling them to institutions at "higher rates," while pocketing the difference. (Id. ¶ 29.) The Complaint does not specify whether

these "higher rates" were below, at or above the institutional rate charged by Plaintiffs. W.H.P.R.'s owner, defendant Richard Hayat, is the alleged leader of the fraud. (*Id.* ¶ 30.)

The first claim for relief alleges that W.H.P.R. is an enterprise for purposes of the RICO statute, as is an association in fact among Hayat and the other individual defendants, which association in fact has as its purpose the securing of journal subscriptions at lower rates and reselling them at higher rates. (*Id.* ¶ 35.) The Complaint alleges that between 2001 and 2008, Hayat and the other individual defendants engaged in acts of mail and wire fraud in furtherance of their scheme, using false names and addresses and obtaining subscriptions to a variety of magazines under false pretenses. (*Id.* ¶¶ 30, 37.)

This conclusory allegation is buttressed by a list of journals that were allegedly obtained by each individual defendant during specified subscription years. For example, paragraph 38 of the Complaint alleges that Richard Hayat secured forty-eight separate individual subscriptions to Plaintiffs' journals between 1998 and 2006, with the intent to resell them to institutions at higher rates. The journals and the subscription years, as well as the affected plaintiff, are listed in the Complaint. The Complaint does not allege the exact date (day, month and year) on which each subscription was ordered; or whether the order was placed by use of the mails, wire, facsimile or internet; or what (if any) false names were used to obtain the subscriptions.

Paragraph 39 contains identical allegations against defendant Randi Hayat, who is Richard Hayat's wife; only the list of journals to which subscriptions were obtained is different. Paragraph 42 contains identical allegations (with a different list of journals and years) as against Patricia Anspach; paragraph 43 as against Thomas Anspach; and paragraph 44 as against Klavdiya Lokshina.

There is also a Schedule A to the Complaint, and paragraph 45 alleges, albeit on information and belief, that Hayat and/or one of the other individual defendants secured individual subscriptions to every journal on that list, under real or fictitious names of some third party, intending to resell the subscriptions at a higher price. Schedule A is thirteen pages long and lists the first and last name of the purported subscriber, the journal subscribed to, the year of the subscription and the name of the plaintiff publisher. There are forty or more listings on each page. There is no allegation that these subscriptions were sent to the address of any of the named defendants; there is no allegation whether the subscriptions were obtained by use of the mail, the internet, the telephone or facsimile.

There is no allegation in the Complaint that the mail or wires were used to deliver the journals subscribed to, although common sense dictates that this must be so. And indeed, Plaintiffs' RICO Case Statement indicates, as to the subscriptions allegedly ordered by each defendant, that each defendant intended that Plaintiffs would deliver the journals subscribed to via the U.S. Mail. (RICO Case Stmt., Jan. 29, 2010, at 3–9.)

These subscriptions are alleged to have been obtained with the intent to defraud the plaintiff into providing an institutional subscription at an individual rate. (Compl. ¶ 46.) By reason of these predicate acts of mail fraud and wire fraud, Plaintiffs allegedly suffered a loss of subscription revenue that constitutes injury to their business or property, all in violation of 18 U.S.C. § 1962(c). (*Id.* ¶ 48.)

Plaintiffs identify Hayat as a recidivist, alleging that the publisher John Wiley & Sons, Inc. asserted a claim against him in

2005 for doing exactly the same thing Plaintiffs allege. The claim was allegedly settled, but the RICO Case Statement avers that Hayat is in breach of that settlement agreement. (RICO Case Stmt. at 19–20.)

The second cause of action alleges conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d). The Complaint alleges that Defendants have conspired to conduct or participate in the affairs of W.H.P.R. and the association in fact (the two alleged enterprises) through a pattern of racketeering activity, which includes the acts of mail or wire fraud alleged in the first cause of action and another act of wire fraud (by use of emails). This last allegedly fraudulent communication was the response given to an inquiry from an agent of Plaintiffs about the source of certain journals. The inquiry was directed to Richard Hayat, who identified originally named defendant Educo Periodicals Co., Inc. ("Educo") as the source of the journals. The email was sent by originally named defendant Barbara Pessina on behalf of Educo and allegedly falsely represented that the journals had been obtained second-hand, from libraries, chemical and pharmaceutical companies, consignments, or backserv lists located online. (Compl. ¶¶ 52–54.)

The remaining causes of action are state law claims, for common law fraud and conspiracy to defraud, breach of contract and conversion. They are predicated on the allegations that underlie the RICO counts.

## II. The Motions to Dismiss

Defendants have moved to dismiss the Complaint in its entirety. Insofar as they seek dismissal of the RICO Claims (Counts I and II), Defendants argue the following:

(1) The Complaint fails to plead the predicate acts of fraud with particularity in compliance with Rule 9(b).

(2) The Complaint fails to plead the existence of a RICO "enterprise."

(3) The Complaint fails to plead that any of the Defendants operated or controlled any purported enterprise.

(4) The Complaint fails to plead that the affairs of any enterprise were conducted through a pattern of racketeering activity.

(5) The Complaint fails to allege damages that are compensable under RICO.

(6) The RICO conspiracy count must be dismissed because the RICO count itself must be dismissed.

As noted above, Defendants also seek dismissal of the state law claims (with the exception that W.H.P.R. and the Hayats do not seek dismissal of the breach of contract claims asserted against them). Because the Court will not be discussing the motions to dismiss insofar as they are directed to the various state law claims, it is not necessary to list Defendants' arguments here.

### DISCUSSION

## I. Standard of Review

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir.2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,*

—— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations, citations and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570, 127 S.Ct. 1955; *Iqbal,* 129 S.Ct. at 1950–51.

■ Additionally, claims sounding in fraud must meet Rule 9(b)'s heightened pleading standard. *See* Fed.R.Civ.P. 9(b). To comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir.2006) (*quoting Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). Rule 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be averred generally."

## II. Fraud Is Pleaded with Sufficient Particularity Except as Against W.H.P.R.

■ All Defendants urge that the Complaint fails to plead the predicate acts of mail and wire fraud with sufficient particularity. W.H.P.R.'s motion to dismiss on that ground is granted; the other defendants' motions to dismiss on that ground are denied.

As set forth above, the Complaint, at paragraphs 38–44, identifies the journals to which each named individual defendant subscribed for allegedly fraudulent purposes, as well as the year in which the subscription was entered, and alleges that Plaintiffs accepted subscription orders by mail and wire (Compl. ¶ 28). The subscription orders placed are alleged to be the false statements, in that each of the subscriptions was allegedly placed as an individual subscription, with the intention that the journal received by the subscriber would be resold to an institution at a higher rate. Plaintiffs allegedly would not have accepted the subscriptions and entered into the transactions had they known what the subscriber intended to do with the journals.

Contrary to the contentions in the various motions to dismiss, these paragraphs tie each remaining individual defendant to subscriptions for specified journals during a specified subscription year; this sufficiently informs each individual defendant about what it is that he or she is supposed to have done to further the alleged fraud. The fact that the subscription orders are identified only by year, rather than by the specific day and month in which they were placed, does not render the pleading insufficiently specific; each individual defendant is sufficiently advised of his or her allegedly fraudulent acts (placing subscription orders under false pretenses), and those acts are identified by both the name of the journal and the approximate time the subscription was placed. The law requires only that each defendant be apprised of the circumstances surrounding the fraudulent conduct with which he or

she stands charged, *Dietrich v. Bauer*, 76 F.Supp.2d 312, 329 (S.D.N.Y.1999), and the allegations outlined above do precisely that for each of the individual defendants. For this reason, the motions by defendants Richard and Randi Hayat, Patricia and Thomas Anspach, and Klavdiya Lokshina to dismiss the Complaint on the ground of failure to plead fraud with particularity are denied.

■ The Court turns next to the remaining corporate defendant, W.H.P.R. Surprisingly, the Complaint contains not a single allegation about what W.H.P.R. did to further the fraudulent scheme, or to commit an act of mail or wire fraud, directly or indirectly. There is no allegation, for example, that W.H.P.R. was the vehicle through which the fraudulently obtained journals were resold to institutions. There is an allegation that Richard Hayat is the owner of W.H.P.R. and that Hayat himself obtained subscriptions through false pretenses; but that is a far cry from alleging that the corporation (either through Hayat or others) took some action to further the fraudulent scheme. W.H.P.R.'s motion to dismiss the Complaint for failure to comply with Rule 9(b) must, therefore, be granted, although the Court grants the motion without prejudice, so that Plaintiffs can try to cure this pleading defect by amendment.

### III. Plaintiffs' Substantive RICO Claim Must Be Dismissed

Under 18 U.S.C. § 1962(c), it is unlawful for any person "employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To plead a civil claim under this section, the plaintiff must allege facts showing the existence of an enterprise affecting interstate commerce, as well as facts tending to show that the defendants were persons "employed by or associated with" the enterprise, and that they "conduct[ed] such enterprise's affairs through a pattern of racketeering activity."

Defendants proffer a variety of reasons why the Complaint presently before the Court is lacking. Some of their arguments are meritless, but others are correct.

### A. The Existence of a RICO Enterprise

Defendants argue first that the Complaint fails to allege the existence of any enterprise. In fact, the Complaint alleges the existence of *two* enterprises—and does so adequately as to one of them.

■ The first alleged enterprise is defendant W.H.P.R., a Long Island-based subscription agent—a corporate purveyor of subscriptions to professional journals. There are numerous factual allegations in the Complaint from which one can infer that professional journals are sold in interstate and foreign commerce—starting with the allegation that Plaintiffs, several of which are non-New York corporations, use W.H.P.R. as their agent to solicit and sell subscriptions to the various journals that they sell in interstate commerce. The enterprise is sufficiently pleaded under Rule 8, which is all that is required. *In re Sumitomo Copper Litig.*, 995 F.Supp. 451, 454 (S.D.N.Y.1998).

The second enterprise identified in the Complaint is a so-called "association in fact" enterprise, consisting of Hayat and the other individual defendants.

■ An association in fact is a group of persons associated together for a common purpose of engaging in a course of conduct. Under the recent case of *Boyle v. United States*, —— U.S. ——, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009), an association in fact enterprise must have a

"structure" exhibiting three features: a purpose, relationships among the individuals associated with the enterprise, and longevity sufficient to permit the associates to pursue the purpose of the enterprise. The association in fact enterprise identified in the Complaint has two of those features, and may have the third.

■ The Complaint alleges that Hayat and the other individual defendants associated together for the common purpose of carrying out the scheme of buying journal subscriptions at lower rates, based on false representations about the identity of the purchasers, and then reselling the journals to institutions at a higher rate. (*See* Compl. ¶ 35.) That takes care of *Boyle*'s purpose requirement.

The Complaint also alleges that this association in fact carried out its activities between 1998 and 2009 (*id.* ¶¶ 38–44)—a sufficient period of time to satisfy the requirement of longevity. The fact that not every individual defendant is alleged to have engaged in fraudulent activity for that entire period is of no moment for longevity purposes, since (as is well known) a person can join in some ongoing fraudulent activity at any point.

The question is whether there are allegations in the Complaint—including the allegations that Hayat is the "leader of the fraud" (*id.* ¶ 30), that the other individual defendants comprising the association in fact regularly identified their address as that of W.H.P.R., and that all of the defendants in the association in fact were working together on a common scheme to defraud Plaintiffs—to satisfy the "relationship" requirement for an association in fact at the pleading stage. I conclude that there are not.

In *Boyle*, the Supreme Court announced that the concept of association "requires both interpersonal relationships and a common interest." 129 S.Ct. at 2244. An association of individuals can be an enter-

prise if it is formed for the purpose of engaging in any type of illicit activity—such as, for example, the activity alleged in Plaintiffs' Complaint—and it need not have any existence apart from the predicate acts committed by its employees and/or associates. *See id.* at 2245. Such a group "need not have a hierarchical structure or a 'chain of command'; .... Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Id.* The high Court emphasized the "breadth" of the concept of an "enterprise" under RICO, and rejected the dissenters' argument that Congress intended RICO to apply only to business-like entities that have some existence apart from their illicit activity. *See id.* at 2243, 2247. The *Boyle* Court thus declined to overturn the defendant's conviction on the ground that his trial judge had failed to charge the jury that an association in fact enterprise had to have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages. *Id.* at 2247.

Here, Plaintiffs have alleged that there existed an association in fact, headed by Richard Hayat and formed for the purpose of fraudulently obtaining individual subscriptions to journals—at the discounted individual rate—and then reselling those journals to institutions at a higher rate. There are no facts pleaded tending to show any relationship among the individual defendants other than through their participation in the affairs of the association in fact enterprise; but no additional relationship is necessary, as long as facts are alleged tending to make it plausible that the Court is confronted with something more than parallel conduct of the

same nature and in the same time frame by different actors in different locations.

However, not a single fact is pleaded tending to show that the various sets of named defendants—the Hayats and their corporation in Long Island, the Pessina and their corporation in the Hudson Valley, the Anspachs in Indiana and Lokshina in Massachusetts—had any interpersonal relationships. Only one pleaded fact—that all of the individual defendants "regularly stated their address as 99 Sherwood Avenue, Farmingdale, New York, the business address of W.H.P.R." (Compl.¶ 30)—admits of an inference that all of the individual defendants were somehow associated; and even that allegation does not specifically contend that they used W.H.P.R.'s address in furtherance of the fraud (it does not, for example, contend that the individual defendants used that address as the mailing address to which the journals should be sent).

The *Boyle* Court made a point of noting that an association required proof of interpersonal relationships. Nothing in the Complaint explains how these particular people, located in different parts of the country, came to an agreement to act together—or even how they knew each other. Indeed, the Complaint does not even allege *that* they each other—although one could fairly infer that originally named defendant Russell Pessina knew Hayat, because Hayat allegedly asked him/Educo to respond to Plaintiffs' 2008 inquiry about the source of certain journals. Facts are asserted in support of the Anspachs motion to dismiss that support an inference that Thomas Anspach knew originally named defendant Barbara Pessina, but those facts do not appear in the pleadings.

In this post-*Twombly* era, I conclude that a plaintiff must allege something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period. Indeed,

*Twombly*'s precise holding was that an antitrust complaint containing not a single factual allegation to support the existence of a conspiracy—nothing more than parallel conduct by separate actors—was insufficiently pleaded as a matter of law. Given the exceptional seriousness of racketeering allegations, a complaint pleading a RICO violation cannot be held to a lesser standard.

I thus accept Defendants' argument that Plaintiffs have failed to plead the existence of an enterprise insofar as the Complaint deals with the so-called association in fact enterprise. Because this pleading defect could be cured by amendment, I dismiss the RICO claim on this ground without prejudice and with leave to amend. It is not necessary for the amended complaint to lay bare every single detail about how the association in fact enterprise came into being, as Defendants' moving papers suggest. However, there has to be something that ties together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together—acting in concert—by means of mail and wire fraud.

**B. Participation in the Conduct of the Enterprise's Affairs**

█ Having identified an enterprise, a civil RICO plaintiff must also plead facts from which it can be inferred that each of the defendants participated, directly or indirectly, in the conduct of the enterprise's affairs. When alleging a violation of § 1962(c), the complaint must set out facts tending to show that each individual defendant "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). For purposes of civil RICO, it is not enough to allege that a defendant provided services that were helpful to an enterprise, without

alleging facts that, if proved, would demonstrate some degree of control over the enterprise. *City of N.Y. v. Smokes–Spirits.com. Inc.,* 541 F.3d 425, 449 (2d Cir. 2008), *rev'd on other grounds,* —— U.S. ——, 130 S.Ct. 983, —— L.Ed.2d —— (2010).

■ The Complaint before the Court sufficiently pleads that Richard Hayat had some degree of control over the operation and management of the enterprise W.H.P.R., in that he is alleged to own that corporation. For that reason, his argument that the Complaint fails to allege his participation in the operation or management of an enterprise cannot succeed.

However, the Complaint does not specifically allege any facts tending to show that Hayat controlled the operation or management of any association in fact. For example, the Complaint does not allege that it was at Hayat's behest that other members of the association in fact engaged in fraudulent conduct, or that Hayat coordinated their efforts or provided a common repository for the fruits of their illicit labors. Therefore, Hayat's motion to dismiss must be granted to the extent that the Complaint alleges that Hayat is liable under § 1962(c) for the conduct of the affairs of the association in fact enterprise.

Insofar as the remaining individual defendants other than Richard Hayat are concerned, the Complaint alleges only that they provided services that were helpful to the association in fact enterprise—by ordering subscriptions under false pretenses. Not a single fact is alleged as to any of these defendants tending to show that they exercised the slightest degree of control over either of the claimed enterprises. Under *Reves,* civil RICO liability is limited to persons who have "*some* part in directing the enterprise's affairs." 507 U.S. at 179, 113 S.Ct. 1163. Thus, the motions to dismiss made by the individual defendants other than Richard Hayat must be grant-

ed, albeit without prejudice and with leave to amend to allege facts that would place those defendants within the ambit of *Reves.*

## C. Pattern of Racketeering Activity

■ The Complaint also must allege facts tending to show that the affairs of each of the pleaded enterprises were conducted through a pattern of racketeering activity. In alleging this as to W.H.P.R., the Complaint is wholly insufficient—not because it fails to allege fraud with particularity, but because it fails to connect the fraud to the affairs of the enterprise. The Complaint fails to allege that Richard Hayat (or anyone else, for that matter) conducted the affairs of the corporation he owned through any pattern of racketeering activity. The Complaint alleges that Hayat (not the corporation) and the other individual defendants personally secured a number of individual subscriptions to journals in their own names (not in the corporation's name) under false pretenses and with the intent to resell those subscriptions to institutions at higher rates. There is no allegation that Hayat caused W.H.P.R. to do anything in relation to this scheme, or that the corporation's operations were in any way connected to the fraudulent obtaining of subscriptions. Again using an obvious example, there is no specific allegation that W.H.P.R. participated in the resale of the fraudulently obtained subscriptions, or that the corporation realized any portion of the illicit profits from the scheme.

The Complaint as it stands (even taking into account the allegations of the RICO Case Statement) alleges nothing more than that a person who happens to be the owner of a corporation, and his wife, and some other people who are not alleged to have anything whatever to do with running the affairs of that corporation, all obtained

subscriptions from Plaintiffs during a ten-year period, under false pretenses and with the intention of diverting profits away from Plaintiffs and into their own pockets. Even pre-*Twombly*, that would not be sufficient to allege that the affairs of the enterprise known as W.H.P.R. were conducted through a pattern of racketeering activity. Post-*Twombly*, the pleading's insufficiency cannot be challenged.[1]

Because the pleading does not adequately allege the existence of the association in fact enterprise, it is not strictly necessary to address Defendants' motions to dismiss on the ground that the Complaint fails to allege that the association's affairs were conducted through a pattern of racketeering activity. However, where, as here, it is alleged that the association in fact was formed for the purpose of engaging in mail and wire fraud, and the association is defined solely and exclusively by its illicit racketeering activity, it appears that this particular pleading requirement has been met.

Defendant Lokshina raises the specter of "open-ended" versus "closed-ended" continuity in connection with her assertion that the Complaint does not plead any "pattern of racketeering activity." But there is no continuity problem in this case. The Complaint alleges that the fraudulent activity extended over roughly a decade. It thus alleges a closed period of repeated conduct lasting well more than two years. *See Vicon Fiber Optics Corp. v. Scrivo*, 201 F.Supp.2d 216, 220–21 (S.D.N.Y.2002). Even if Lokshina herself made her fraudulent purchases over a much shorter period, it is the length of time over which the affairs of the association in fact enterprise were illicitly conducted that matters-not the length of time that any one individual

who was involved in racketeering committed predicate acts.

**D. RICO Damages**

Finally, all Defendants argue that Plaintiffs have not adequately pleaded damages recoverable under RICO. That argument fails.

The RICO statute provides that:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .

18 U.S.C. § 1964(c). Thus, to state a civil RICO claim, a plaintiff must plead an injury to his "business or property" that was proximately caused by the substantive RICO violation. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767 (2d Cir.1994).

Here, Plaintiffs allege that they sell journals to two classes of subscribers at two different rates, with institutions paying more than individuals; that Defendants fraudulently obtained subscriptions at the lower individual rate by representing that individuals were subscribing to the journals for their own individual use, only to turn around and resell those same journals at a higher price to institutions; and that Plaintiffs were deprived of the income they would have received if the institutions had subscribed to the journals at the institutional rate, with Defendants pocketing what should have been Plaintiffs' profit. The loss incurred by Plaintiffs came about by virtue of the RICO

---

1. The Complaint further alleges upon information and belief that Hayat and/or the other individual defendants secured the individual subscriptions identified on Schedule A. This does not implicate Hayat in running the affairs of the corporation W.H.P.R. through any pattern of racketeering activity.

conspiracy, and constituted an injury to Plaintiffs' business. The literal language of the statute—which the Supreme Court found controlling in *Boyle, see* 129 S.Ct. at 2246–47—makes those damages compensable under RICO. Finding otherwise would require the Court to adopt Defendants' argument that nothing more is pleaded here than breach of contract—which is simply not the case.

Defendants are correct that the Complaint does not allege the sort of "out-of-pocket" loss often present in a fraud-based RICO action. Instead, Plaintiffs allege that, as a result of Defendants' fraudulent scheme, they suffered "a loss of subscription revenue" (Compl.¶ 48)—specifically, the difference between the individual rates Plaintiffs actually received, and the higher rates they would have received if the institutional end users had subscribed to the journals. In other words, Plaintiffs allege lost profits. Defendants are *not* correct in presuming that Plaintiffs cannot recover such lost profits under RICO.

■ A careful reading of Second Circuit case law supports this Court's conclusion that a plaintiff can adequately plead RICO damages by alleging lost profits where, as here, they constitute an injury to plaintiff's business, were proximately caused by the alleged racketeering, and are not merely speculative. For example, in *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir.1994), the Second Circuit upheld a jury award of "lost profits" from construction contracts plaintiff "might have obtained but for the racketeering," where plaintiff had proceeded on the theory that the lost profits constituted "business injury caused by a racketeering conspiracy." *See id.* at 1343: *see also Den Hollander v. Flash Dancers Topless Club*, 173 Fed.Appx. 15, 17–18 (2d Cir.2008) (rejecting RICO plaintiff's claims of lost business profits not because they are unrecoverable under RICO, but because plaintiff

had failed to allege they were proximately caused by defendants' racketeering); *Commercial Cleaning Servs. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 384 (2d Cir.2001) (concluding that RICO plaintiff had adequately pled RICO injury by alleging lost business profits directly caused by defendant-competitor's fraudulent hiring scheme).

Numerous district courts in this Circuit have also reached the conclusion that a civil RICO plaintiff may recover lost profits, subject to the traditional limitations of proximate cause and lack of speculativeness. *See, e.g., 3947 Austin Blvd. Assocs., LLC v. M.K.D. Capital Corp.*, No. 04 Civ. 8596, 2007 U.S. Dist. LEXIS 39762, at *10 (S.D.N.Y. May 30, 2007); *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, No. 93 Civ. 716, 1999 WL 60135, at *5, 1999 U.S. Dist. LEXIS 1118, at *14 (N.D.N.Y. Feb. 5, 1999); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F.Supp. 127, 142 (S.D.N.Y.1988). This Court agrees; the plain language of the RICO statute does not bar Plaintiffs from recovering lost profits proximately caused by a racketeering enterprise engaged in subscription fraud.

Defendants' argument that Plaintiffs have failed to plead RICO injury because "[b]enefit of the bargain damages are not recoverable under § 1964(c)" (Mem. in Supp. of Defs. W.H.P.R., Richard Hayat and Randi Hayat's Mot. to Dismiss, Sept. 25, 2009, at 14), is misplaced. This is not a "benefit of the bargain" case, as that phrase has been used by certain courts finding such damages unrecoverable under RICO. Two of the cases cited by Defendants illustrate the distinction. *See Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 Civ. 1052, 1992 WL 73473 (S.D.N.Y. Apr. 1, 1992); *Henkind v. Brauser*, No. 87 Civ. 4072, 1989 WL 54109 (S.D.N.Y. May 17, 1989). In both *Aca-*

*demic Industries* and *Henkind,* plaintiffs alleged that they had been fraudulently induced to make an investment, and sought RICO damages not only for their out-of-pocket investment, but also for the falsely promised—and entirely illusory— fruits of the fraudulent transaction. *See Academic Indus.,* 1992 WL 73473, at *1–2 (holding that plaintiff companies, which had been fraudulently induced to enter into an agreement under which defendant would provide investment banking services, could recover their "out-of-pocket expenditures," but not "any profits plaintiffs would have earned had [defendant] carried through on its promises"); *Henkind,* 1989 WL 54109, at *1, *6 (holding that plaintiffs, who had been fraudulently induced to invest in defendants' sham partnership, could recover their out-of-pocket investment, but not the falsely promised profits).

Thus, in both cases, plaintiffs ran afoul of the rule that RICO damages cannot place plaintiffs in a *better* position than they would have been in if the racketeering had not occurred. *See Commercial Union Assurance Co. PLC v. Milken,* 17 F.3d 608, 612 (2d Cir.1994). Put differently, the *Academic Industries* and *Henkind* plaintiffs failed to show proximate cause— defendants' misrepresentations induced plaintiffs to invest, but did not cause plaintiffs to lose the supposed benefits of the fraudulent investments. Indeed, in *Academic Industries,* Judge Sand expressly noted that if plaintiffs had also declined to pursue other business opportunities in reliance on defendants' misrepresentations, *those* lost profits *would* be recoverable. *See* 1992 WL 73473, at *2. In essence, both cases simply reinforce the principle that, as stated by the Supreme Court, a RICO plaintiff "can only recover to the extent that ... he has been injured in his business or property *by the conduct constituting the violation.*" *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (emphasis added); *cf. McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 228–29 (2d Cir.2008) (reasoning that a RICO plaintiff cannot recover benefit of the bargain or "expectancy" damages in "fraud in the inducement" cases because RICO "compensates only for injury to 'business or property,'" not for injury to an expectation interest that would not have existed absent the alleged RICO violation (*quoting* 18 U.S.C. § 1964(c))).

 Here, by contrast, Plaintiffs do not seek to recover lost profits that would have been generated by the fraudulent subscription agreements with Defendants. Instead, they allege that Defendants' subscription fraud—their racketeering—directly caused Plaintiffs to lose revenues that they otherwise would have earned by selling the subscriptions at the higher, institutional rate. In other words, Plaintiffs' RICO claim seeks to recover profits that they allegedly would have earned if the racketeering had not occurred.

The other two cases cited by Defendants in support of their "benefit of the bargain" argument, *First Nationwide Bank* and *Commercial Union,* are more easily disposed of, as they are wholly inapposite. In both cases, the RICO claim was not *ripe* because the plaintiffs still had a chance of recouping—or, indeed, had already recouped—their fraudulently induced investments. In *Commercial Union,* the Second Circuit affirmed the dismissal of plaintiffs' RICO claim because their investment had been fully repaid through liquidation; thus, plaintiffs "ha[d] already been placed" in "the position they would have been in but for the illegal conduct" and, "without provable damages, no viable RICO cause of action [could] be maintained." 17 F.3d at 612.

In *First Nationwide Bank,* the plaintiff bank sought to recover RICO damages for

loans fraudulently induced by defendants' misrepresentations regarding the value of the collateral properties. 27 F.3d at 766–67. However, because the bank had not yet foreclosed on several of the loans, the Second Circuit concluded that its "actual damages ..., if any, are yet to be determined," and held that plaintiff's claims therefore were not "ripe for suit ... under RICO." *Id.* at 768–69 (holding that plaintiff-creditor "can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated"); *accord Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397–98 (S.D.N.Y.2000) (finding that plaintiff-creditors had failed to plead cognizable RICO damages because they had made no effort to recover the loans in question through the underlying mortgages and notes).

Here, the ripeness of Plaintiffs' RICO claims is not in doubt. Plaintiffs are not creditors likely to recoup some or all of their losses through foreclosure or some other remedy; instead, Plaintiffs are publishers alleging that they have lost definite profits—the difference between the individual and institutional subscription rates—on scores of subscriptions over a period of about ten years as a result of Defendants' fraudulent scheme.

In sum, the Court concludes that Plaintiffs have adequately pled RICO damages, as they have alleged lost business profits caused by Defendants' racketeering. Of course, if Plaintiffs succeed in amending their Complaint to assert a viable RICO claim and this case proceeds, Plaintiffs will have to contend with the limitation of speculativeness. But at the pleading stage, it suffices that Plaintiffs have alleged damages potentially recoverable under the RICO statute. Accordingly, Defendants' motion to dismiss on this ground is denied.

For all of the reasons set forth above, the first cause of action—the substantive RICO count—is dismissed without preju-

dice as against all Defendants. Plaintiffs have thirty days from the date of this opinion to file an amended complaint addressing the deficiencies noted herein, and containing factual allegations (not conclusions) tending to show (1) that there is some relationship between and among defendants, such that one could infer the existence of an association in fact among them, as opposed to merely the fortuity of parallel conduct; (2) that any defendant other than Richard Hayat participated in the operation or management of the two alleged enterprises; (3) that Richard Hayat participated in the operation or management of any association in fact enterprise; and (4) that the affairs of W.H.P.R were conducted, directly or indirectly, through a pattern of racketeering activity. Thereafter, Defendants will have thirty days to make whatever motions to dismiss they deem appropriate—provided they are consistent with this opinion, which means that Defendants may not reargue issues already decided against them.

## IV. The RICO Conspiracy Claim Is Dismissed Without Prejudice

Defendants move to dismiss the second cause of action, which alleges conspiracy to commit racketeering activity in violation of 18 U.S.C. § 1962(d). Their principal ground for moving is that the Court's dismissal of the § 1962(c) claim mandates dismissal of the conspiracy claim. This is, of course, correct. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir.1996), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F.Supp.2d 293, 300 (S.D.N.Y.2004). Therefore, the second cause of action is dismissed.

But because I have given Plaintiffs thirty days to try to cure the defects in their pleading of a § 1962(c) claim, the RICO

conspiracy claim is dismissed without prejudice and with leave to amend. And because amendment will be forthcoming, it is appropriate to head off another motion to dismiss (if that be possible, which I doubt) by making some comments about the sufficiency of the § 1962(d) claim as presently pleaded.

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(c). The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990).

The Second Circuit has held that a complaint alleging a violation of § 1962(d) must contain allegations of "some factual basis for a finding of a conscious agreement among the defendants." *Id.* at 26 n. 4. Even before *Twombly*, and certainly after *Twombly*, these allegations may not be conclusory, but must set forth specific facts tending to show that each of the defendants entered into an agreement *to conduct the affairs of a particular, identified enterprise through a pattern of racketeering activity*—not simply that each defendant committed two or more acts that would qualify as predicate acts, without regard to whether those acts were committed in furtherance of the activity of the enterprise. Again, parallel conduct by different defendants affords an insufficient basis for inferring that an agreement was reached.

██ The Complaint presently before the Court violates this rule. It contains nothing more than a conclusory allegation of an agreement among defendants and a further allegation that each of the individual defendants committed certain discrete acts of fraud. The second cause of action would have been dismissed on this ground even if the first cause of action had not also been dismissed. Any amended plead-ing must address this deficiency, or the RICO conspiracy claim will be dismissed with prejudice and without leave to re-plead.

## V. The Anspach Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Is Denied Without Prejudice to Renewal

██ The Anspach Defendants, residents of Indiana (Compl. ¶¶ 15–16), move separately to dismiss pursuant to Rule 12(b)(2) on the ground that the Court lacks personal jurisdiction over them. Plaintiffs claim that Thomas and Patricia Anspach "conspired" with Richard Hayat, and that they subscribed to several specified journals at the individual rate intending to resell them to institutions at higher rates. (*Id.* ¶¶ 30, 42–43.) For the reasons stated below, the Court concludes that if the current Complaint stated a viable RICO claim against Defendants, exercising jurisdiction over the Anspachs would be proper pursuant to 18 U.S.C. § 1965(b) because it would serve the "ends of justice." Accordingly, the Anspachs' motion to dismiss for lack of personal jurisdiction is denied, without prejudice to its renewal after the filing of an amended complaint.

██ On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003). Where, as here, the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." *DiStefano v. Carozzi N.A., Inc.*, 286 F.3d 81, 84 (2d Cir.2001). In deciding whether a plaintiff has met this burden, the court must "construe the pleadings and affidavits in the light most

favorable to [plaintiff], resolving all doubts in [plaintiff's] favor." *Id.* at 84. "However, conclusory allegations are not enough to establish personal jurisdiction." *Galerie Gmurzynska v. Hutton,* 257 F.Supp.2d 621, 625 (S.D.N.Y.2003) (internal quotations omitted), *aff'd,* 355 F.3d 206 (2d Cir. 2004).

The RICO statute's jurisdiction and venue section, 18 U.S.C. § 1965, provides, in relevant part:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

. . .

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

■ Inexplicably, and much to Plaintiffs' delight, the Anspach Defendants adopt the position that § 1965(d) provides for nationwide service of process in civil RICO actions-the Anspachs assert only that the exercise of personal jurisdiction over them would not comport with due process. (*See* Mem. in Supp. of Mot. to Dismiss by Anspach Defs., Oct. 9, 2009, at 3–4.) That, however, is not the law in this Circuit. Instead, "The law in this Circuit is clear that the RICO statute 'does not

provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found.'" *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* No. 01 Civ. 1574, 2002 WL 719471, at *6, 2002 U.S. Dist. LEXIS 10737, at *20 (E.D.N.Y.2002) (*quoting PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 71 (2d Cir. 1998)).

In *PT United,* the Second Circuit examined the meaning of § 1965, and expressly rejected the position—which had been adopted by at least one other circuit court, *see Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 942 (11th Cir.1997)—that § 1965(d) confers nationwide jurisdiction over RICO defendants. *PT United,* 138 F.3d at 70–72. Instead, the *PT United* court held that:

[Section] 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.

*Id.* at 71. Then, "§ 1965(b) provides for nationwide service and jurisdiction over 'other parties' not residing in the district, . . . including co-defendants . . . . This jurisdiction is not automatic but requires a showing that the 'ends of justice' so require." *Id.* (*quoting* 18 U.S.C. § 1965(b)). Meanwhile, § 1965(d) applies only to "'all other process,' mean[ing] process other than a summons of a defendant or subpoena of a witness." *Id.* at 72 (*quoting* 18 U.S.C. § 1965(d)).

■ In sum, in this Circuit, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established

as to at least one defendant. Then, jurisdiction can be obtained on a showing that the 'ends of justice' so require." *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC,* No. 07 Civ. 3494, 2007 WL 2044656, at *10, 2007 U.S. Dist. LEXIS 51081, at *30 (S.D.N.Y. July 17, 2007) (internal quotations and citation omitted); *accord Zito v. Leasecomm Corp.,* No. 02 Civ. 8074, 2004 WL 2211650, at *20, 2004 U.S. Dist. LEXIS 19778, at *62 (S.D.N.Y. Sept. 30, 2004) (Lynch, J.).

In *PT United,* the Second Circuit did not offer an explanation as to what exactly the RICO statute means by "ends of justice." *See* 138 F.3d at 71–72. However, it is generally accepted that "ends of justice" jurisdiction is authorized where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants. *See Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP,* No. 03 Civ. 613, 2004 WL 2848524, at *7, 2004 U.S. Dist. LEXIS 24900, at *21 (S.D.N.Y. Dec. 9, 2004); *Zito,* 2004 WL 2211650, at *20, 2004 U.S. Dist. LEXIS 19778, at *62; *Gates v. Wilkinson,* No. 01 Civ. 3145, 2003 WL 21297296, at *3, 2003 U.S. Dist LEXIS 9417, at *9 (S.D.N.Y. June 4, 2003); *Anderson v. Ind. Black Expo, Inc.,* 81 F.Supp.2d 494, 505 (S.D.N.Y.2000); *Daly v. Castro Llanes,* 30 F.Supp.2d 407, 413 (S.D.N.Y.1998).

Here, there does not seem to be any dispute that at least one (and likely several) of the Defendants is initially subject to personal jurisdiction in New York pursuant to § 1965(a). (*See* Compl. ¶¶ 9–11 (alleging that W.H.P.R. is a New York corporation, and that both Hayats are New York residents).) Further, the Anspach Defendants do not contend—and it certainly does not appear—that any other district would be able to hear the RICO claim against all of the Defendants. Finally, the Anspach Defendants have not raised any legitimate constitutional objection to this Court's exercise of "ends of justice" jurisdiction over them.

Accordingly, the Court concludes that if the allegations in the Complaint stated a viable RICO claim, it would be proper to exercise "ends of justice" RICO jurisdiction over the Anspachs pursuant to § 1965(b). The Court does not address the question of whether the Anspachs are also subject to personal jurisdiction for Plaintiffs' state law claims pursuant to New York's long-arm statute. For if the RICO claim were present, the Court likely could exercise pendent personal jurisdiction over the Anspachs, *see IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1056–57 (2d Cir.1993); and, as this opinion makes clear, the Court will not attempt to exercise supplemental jurisdiction over the state law claims in the absence of the RICO claim.

Thus, the Court denies the Anspach Defendants' motion to dismiss for lack of personal jurisdiction. The Anspachs may renew their motion upon the filing of an amended complaint, making arguments that are not inconsistent with the law as discussed in this opinion.

## VI. The Motions to Dismiss the State Law Claims Are Denied Without Prejudice to Renewal

The remainder of everyone's motion to dismiss addresses the adequacy of the various state law claims—for fraud, conspiracy, breach of contract and conversion—that are asserted against Defendants. These motions are all denied without prejudice to renewal.

The parties are advised that the Court will decline to hear the state law claims if Plaintiffs fail to plead any viable federal claim, and will allow a state court judge to adjudicate the viability of Plaintiffs' common law claims. If, however, Plaintiffs

manage to plead a viable RICO claim under either or both sections invoked, the Court will assert supplemental jurisdiction over the pendent claims and will act on any renewed motion to dismiss those claims.

If Plaintiffs decline to replead within thirty days, the instant Complaint will be dismissed without prejudice so that the state law claims can be asserted in a more appropriate forum.

### CONCLUSION

Because there exists some pleading defect in the RICO claims as against each and every defendant, the Court dismisses the Complaint as against all Defendants, without prejudice and with leave to amend in accordance with the instructions set forth above.

The Clerk of the Court shall remove the following motions from the Court's list of pending motions: Docket Nos. 30, 36 and 40.

This constitutes the decision and order of the Court.