**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LENHOFF ENTERPRISES, INC., DBA Lenhoff and Lenhoff, a California corporation, | No.   16-55739 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-01086-BRO-FFM |
| v. | |
| UNITED TALENT AGENCY, INC., a California corporation; INTERNATIONAL CREATIVE MANAGEMENT PARTNERS, LLC, a Delaware limited liability company, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted February 16, 2018
Pasadena, California

Before:  BERZON and BYBEE, Circuit Judges, and GLEASON,** District Judge.

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Sharon L. Gleason, United States District Judge for the District of Alaska, sitting by designation.

Plaintiff Lenhoff Enterprises is a boutique talent agency. Defendants United Talent Agency ("UTA") and International Creative Management Partners ("ICM") are larger talent agencies and, together with two other agencies, comprise what Lenhoff terms the "Big Four" or "Uber" Agencies. Lenhoff sued UTA and ICM, asserting claims for (1) violation of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., and Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq.; (3) intentional interference with contract under California common law; and (4) intentional interference with prospective economic advantage under California common law. The district court dismissed Lenhoff's third amended complaint with prejudice and denied Lenhoff's motion for reconsideration. We affirm.

1. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review *de novo* the district court's dismissal of a complaint for failure to state a claim." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). "In conducting this review, we accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Id.*

2. "Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d

2

1192, 1196–97 (9th Cir. 2012) (quoting 15 U.S.C. § 1). The Supreme Court "has repeatedly observed that Section 1 'outlaw[s] only unreasonable restraints.'" *Id.* (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)). Certain restraints—such as horizontal agreements among competitors to fix prices or divide markets—are "per se" unlawful. *Id.* at 1197 n.6. Others are evaluated under the "rule of reason." *Id.* at 1197. But irrespective of "[w]hether a plaintiff pursues a per se claim or a rule of reason claim under § 1, the first requirement is to allege a contract, combination in the form of trust or otherwise, or conspiracy." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 663 (9th Cir. 2009) (quotation marks omitted). The district court found that Lenhoff failed to plead this first requirement of a § 1 claim, and we agree.

To state a § 1 claim, "a formulaic recitation of the elements . . . will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must allege such facts as will nudge the claim "across the line from conceivable to plausible." *Id.* at 570. In this regard, "parallel conduct, such as competitors adopting similar policies around the same time in response to similar market conditions, may constitute circumstantial evidence of anticompetitive behavior." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015). "But mere allegations of parallel conduct—even consciously parallel conduct—are

3

insufficient . . . ." *Id.* "Plaintiffs must plead something more, some further factual enhancement, a further circumstance pointing toward a meeting of the minds of the alleged conspirators." *Id.* (quotation marks omitted). That is, "plaintiffs must plead evidentiary facts," such as "who, did what, to whom (or with whom), where, and when," *id.* at 1194 n.6 (quotation marks omitted), or "circumstantial evidence in the form of plus factors" that "coupled with parallel conduct . . . take a complaint from merely possible to plausible," *id.* at 1194 n.7; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

At best, Lenhoff's third amended complaint pleads parallel conduct without alleging the "something more" required to state a claim. With respect to Lenhoff's argument that the Uber Agencies conspired to fix a "3-3-10 packaging fee," the third amended complaint makes only passing reference to the Uber Agencies charging such a fee. This is a bare, conclusory allegation of parallel conduct and so does not adequately state a § 1 claim. *See Kendall*, 518 F.3d at 1047–48.

The third amended complaint goes into greater detail with regard to the Association of Talent Agents ("ATA"), a trade association that represents member agencies in negotiations with talent unions and guilds, and "Rule 16(g)." Lenhoff alleges the Uber Agencies acted through representatives at the ATA to allow Rule 16(g) to expire so as to gain access to outside funding and thereby increase their

4

market dominance. Specifically, Lenhoff contends the "who" of its alleged conspiracy is the ATA's Strategic Planning Committee; the "what" is a conspiracy to eliminate Rule 16(g); the "when" is from the Strategic Planning Committee's formation in 1999 onward; and the "where" is the ATA's offices. But these facts amount to nothing more than an allegation that defendants participated in a lawful trade organization, and "mere participation in trade-organization meetings . . . does not suggest an illegal agreement." *In re Musical Instruments*, 798 F.3d at 1196.

The third amended complaint's other allegations concentrate on the Uber Agencies co-packaging scripted television series "almost exclusively" with each other and "coercing" television networks and studios to deal only with them. At the same time, however, the complaint acknowledges a market-based reason for why larger agencies might co-package predominantly amongst themselves: larger agencies "are uniquely and advantageously situated to participate in packaging [scripted television series] because of their large, exclusive, and in-demand talent rosters." Although the complaint attaches exhibits purporting to show the number of times the Uber Agencies co-packaged with each other as opposed to with smaller agencies, these exhibits are not particularly helpful to Lenhoff as they in fact show that the Uber Agencies co-packaged with smaller agencies on several occasions in the relevant timeframe. More fundamentally, the complaint nowhere

pleads the evidentiary facts that would nudge its claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570. Thus, Lenhoff has not stated a § 1 claim.

3.      Where a complaint alleges the same conduct as both a violation of the Sherman Act and a violation of California's Cartwright Act and UCL, the determination that the alleged conduct is not an unreasonable restraint of trade under the Sherman Act necessarily implies that the conduct is not unlawful under the Cartwright Act or the "unlawful" prong of the UCL. *See name.space, Inc. v. Internet Corp.* 2 *for Assigned Names & Numbers*, 795 F.3d 1124, 1131 & n.5 (9th Cir. 015); *William O. Gilley Enters.*, 588 F.3d at 669; *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1092 (9th Cir. 2000). Lenhoff's claim under the Cartwright Act and the "unlawful" prong of the UCL is therefore deficient for the same reasons given above.

Lenhoff's claims under the "unfair" prong of the UCL fail because it has not adequately alleged—for the same reasons its other claims lack merit—that the Uber Agencies' conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or

6

harms competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999); *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691–92 (9th Cir. 2015).

4.     With respect to Lenhoff's claims under California common law, a defendant is ordinarily not subject to liability for intentional interference with contract if the interference consists merely of extending an offer that induces an individual to terminate an at-will relationship. *Reeves v. Hanlon*, 95 P.3d 513, 519–20 (Cal. 2004). To state a claim for intentional interference with an at-will contract, a plaintiff must plead "an independently wrongful act" beyond the act of interference itself—i.e., an act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 520.

Although Lenhoff alleges that defendants "poached" two of its clients by promising them more favorable terms, it fails to allege that its contracts with those clients were anything other than at will. Lenhoff's argument that "Rider D"—attached as an exhibit to its complaint—somehow limited these clients' ability to terminate their contracts is meritless. Rider D plainly has nothing to do with contracts for an unspecified duration (as Lenhoff admits these contracts were). Rather, Rider D provides a limited ability to terminate a contract that would otherwise have lasted for a specified duration.

7

Because Lenhoff did not plausibly allege that its relationship with its clients was other than at will, it was required to plead an independently wrongful act—which it did not do. *See id.* Lenhoff therefore did not state a claim for intentional interference with contract, and its separate claim for intentional interference with prospective economic advantage fails for the same reason. *See id.* (applying the same "independently wrongful act" standard to intentional interference with an at-will contract as to intentional interference with prospective economic advantage). Accordingly, dismissal of Lenhoff's third amended complaint was proper.

5.      "We review for abuse of discretion the district court's denial of leave to amend." *AE ex rel. Hernandez*, 666 F.3d at 636. "Although leave to amend a deficient complaint shall be freely given when justice so requires, leave may be denied if amendment of the complaint would be futile." *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citation omitted). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotation marks and alteration omitted). Here, the district court permitted Lenhoff to file three amended complaints, and with

8

each amendment, Lenhoff failed to plead its claims with the requisite particularity. Lenhoff provides no reason to suppose further amendment would be anything but futile: the declarations attached to its opposition to defendants' motions to dismiss do not address the deficiencies identified above and are merely cumulative of allegations already pled in the third amended complaint. Thus, the district court did not abuse its discretion in denying leave to amend. *See William O. Gilley Enters.*, 588 F.3d at 669 n.8 ("[A]ssuming that Gilley could, in the abstract, amend his complaint to state a claim . . . , his repeated failure to do just that suggests that it would be futile to offer him another chance to do so.").

6. Lenhoff filed its notice of appeal while its motion for reconsideration was still pending before the district court and never filed a new or amended notice of appeal after the district court denied its motion. The district court's denial of Lenhoff's motion for reconsideration is therefore not properly before us. *See Harris v. Mangum*, 863 F.3d 1133, 1137–38 n.1 (9th Cir. 2017).

**AFFIRMED.**